BRANDE, APPELLANT, v. BABCOCK HARDWARE· CO., RE-
SPONDENT.

(No. 2,379.)

(Submitted February 15, 1907. Decided February 25, 1907.)

(88 Pac. 949.)

*Chattel Mortgages—Grain—Purchaser in Good Faith—Evi-
dence—Costs—Taxation—Burden of Proof.*

Chattel Mortgages—Grain—Purchaser After Removal—Evidence.
    1.  Evidence adduced in an action to recover the value of a crop of
wheat, upon which plaintiff held a chattel mortgage, from the purchaser
of the same, examined and held sufficient to warrant the district court
in directing a verdict for defendant.

Same—Grain—Removal from Land of Mortgagor—*Bona Fide* Purchaser.
    2.  Where mortgaged grain has been removed from the land of the
mortgagor, it is, under Civil Code, section 3876, *prima facie* free
from encumbrance, and the mere fact that one who bought it after
its removal had knowledge that it was once mortgaged is not alone
sufficient to prevent his being a *bona fide* purchaser.

Same—Grain—Removal from Land of Purchaser—*Bona Fide* Purchaser—
Estoppel.
    3.  Unless a buyer of mortgaged grain, after its removal from the land
of the mortgagor, has estopped himself in some way to deny the con-
tinued existence of the mortgage lien, he may safely buy under the
presumption that the lien has been extinguished.

Same—Grain—Waiver of Lien.
    4.  Where an agent of a mortgagee had taken a mortgage on a crop
of grain in his own name, for the benefit of his principal, and agreed
with the secretary of a mercantile corporation which furnished the
seed for the crop, that the corporation might purchase the crop at
a stipulated price and pay him (mortgagee's agent) the balance due
after deduction of the cost of the seed, he bartered the mortgage lien
—if he did not waive it altogether—for the promise of the corpora-
tion to pay the balance to him.

Costs—Taxation—Memorandum—Items Properly Chargeable—Burden of
Proof.
    5.  A memorandum of items of costs duly verified, served on the
opposite party, and filed with the clerk, is *prima facie* evidence that
the items were necessarily expended and properly taxable unless they
appear otherwise on the face, and the burden of showing that such
items were not properly taxable is on the party disputing them.

*Appeal from District Court, Yellowstone County; C. H. Loud,
Judge.*

Action by L. L. Brande against the A. L. Babcock Hardware Company. Judgment for defendant, and plaintiff appeals. Affirmed.

*Mr. Fred H. Hathborn,* and *Mr. Harry A. Groves,* for Appellant.

Does a purchaser of a crop after severance, with full knowledge of a chattel mortgage thereon, away from the premises on which it was grown, take the same discharged from the mortgage? The following authorities answer this question in the negative: *Martin* v. *Thompson,* 63 Cal. 4; *Wilson* v. *Prouty,* 70 Cal. 196, 11 Pac. 608; *Byrnes* v. *Hatch,* 77 Cal. 241, 19 Pac. 482; *Chittenden* v. *Pratt,* 89 Cal. 178, 26 Pac. 626; *Campodonico* v. *Oregon Imp. Co.,* 87 Cal. 566, 25 Pac. 763; *Bank of Woodland* v. *Duncan,* 117 Cal. 412, 49 Pac. 414; *Summerville* v. *Stockton Milling Co.,* 142 Cal. 529, 76 Pac. 243; *Bank of Ukiah* v. *Gibson* (Cal.), 39 Pac. 1069; *Perkins* v. *Maier & Zobelein Brewery,* 133 Cal. 496, 65 Pac. 1030. Under the evidence the court could not declare as a matter of law that appellant had waived his mortgage lien. (*Chittenden* v. *Pratt,* 89 Cal. 178, 26 Pac. 626; *Zorn* v. *Livesley,* 44 Or. 501, 75 Pac. 1057; *Stillman* v. *Hamer,* 70 Kan. 469, 109 Am. St. Rep. 465, 78 Pac. 836; *McCabe* v. *Montana etc. Ry. Co.,* 30 Mont. 323, 76 Pac. 701.)

It is only fair to the adverse party that at least a sufficient showing should be made upon the face of a cost-bill to enable such party to ascertain therefrom who the witnesses are, where they reside, where they were subpoenaed, how many days they claim to have been in attendance upon court, and the number of miles actually traveled by them in obedience to a subpoena or the request of the successful party. (*Garr* v. *Cranney,* 25 Utah, 193, 70 Pac. 853; *Cole* v. *Ducheneau,* 13 Utah, 42, 44 Pac. 92; *Stickney* v. *Berry,* 7 Idaho, 303, 62 Pac. 924.)

*Mr. W. M. Johnston,* for Respondent.

The removal of the crop before sale, as alleged in appellant's complaint, destroyed the lien of appellant's mortgage. (*Water-*

*man* v. *Green,* 59 Cal. 142; *Goodyear* v. *Williston,* 42 Cal. 11; *Gillilan* v. *Kendall,* 26 Neb. 82, 18 Am. St. Rep. 766, 42 N. W. 281.) It has been held that the filing of a chattel mortgage is not constructive notice to a commission merchant. (*Greer* v. *Newland,* 70 Kan. 310, 109 Am. St. Rep. 424, 77 Pac. 98, 70 L. R. A. 554.) Waiver of mortgage liens need not be in writing, nor supported by a consideration. (*Livingston* v. *Stevens,* 122 Iowa, 62, 94 N. W. 925-927; *Livingston* v. *Heck,* 122 Iowa, 74, 94 N. W. 1098; *Frick Co.* v. *Western etc. Milling Co.,* 51 Kan. 370, 32 Pac. 1103; *First Nat. Bank* v. *Weed,* 89 Mich. 357, 50 N. W. 864; *Anderson* v. *South Chicago Brewing Co.,* 173 Ill. 213, 50 N. E. 655; *Littlejohn* v. *Pearson,* 23 Neb. 192, 36 N. W. 477, 7 Cyc. 49. See, also, cases digested in 9 Century Digest, 2819; *New England M. S. Co.* v. *Great Western Elevator,* 6 N. Dak. 407, 71 N. W. 130; *Peterson* v. *St. Anthony & D. E. C. Co.,* 9 N. Dak. 55, 81 Am. St. Rep. 528, 81 N. W. 59; *Drexel* v. *Murphy,* 59 Neb. 210, 80 N. W. 813; *Houston etc. Ry. Co.* v. *Garrison* (Tex. Civ. App.), 37 S. W. 971; *Maier* v. *Freeman,* 112 Cal. 8, 53 Am. St. Rep. 151, 44 Pac. 357, 7 Cyc. 47.)

Where an agent is held out as having full authority in the premises, holds the note and manages the entire affair, his settlement will be held within the apparent scope of his authority. (*Dabney* v. *McFarlin* (Tex. Civ. App.), 34 S. W. 142; *Cranwell* v. *Clinton Realty Co.,* 67 N. J. Eq. 540, 58 Atl. 1030; *Daniel* v. *Atlantic C. L. R. Co.,* 136 N. C. 517, 67 L. R. A. 455, 48 S. E. 816-818; *Flint* v. *Boston etc. R. Co.,* 73 N. H. 141, 59 Atl. 938; *Forked Deer Pants Co.* v. *Shipley,* 25 Ky. Law Rep. 2299, 80 S. W. 476; *Fishbaugh* v. *Spunaugle,* 118 Iowa, 337, 92 N. W. 58.)

MR. JUSTICE SMITH delivered the opinion of the court.

This action was begun to recover the sum of $504, the alleged value of certain wheat sold by one Farr to the defendant company, upon which plaintiff held a chattel mortgage, of which defendant is alleged to have had notice. At the close of the testimony, the court directed the jury to return a verdict for the

defendant, and upon such verdict judgment was entered. From that judgment the plaintiff has appealed to this court.

It appears that on the twenty-ninth day of December, 1903, Farr made, executed, and delivered to plaintiff his promissory note, and on the same day, to secure the note, made his chattel mortgage upon the crop to be raised by him in the following year, 1904. This note and mortgage were taken by Austin North, the agent of plaintiff. The plaintiff nowhere appears personally in the action. In the spring of 1904 Farr went to the respondent company to buy seed wheat on credit, which was refused him; but he finally obtained the same by giving a note therefor and signing a contract to sell the crop raised from said seed to the Babcock Company. The form of contract was as follows:

"This agreement, made and entered into this —— A. D. ——, by and between the A. L. Babcock Hardware Company of Billings, Montana, a corporation, the party of the first part herein, and ——, party of the second part, witnesseth: That the parties of the first and second parts have this day mutually agreed and covenanted, and do by these presents bind themselves in the manner following; that is to say:

"First. For and in consideration of the covenants and agreements hereinafter contained to be kept and performed by the said party of the second part, the said party of the first part hereby agrees to sell and deliver —— to the said party of the second part on demand —— pounds of No. One hard seed wheat, or so much thereof as may be desired by the said party of the second part, at the rate of —— per hundred weight.

"Second. Said party of the second part hereby agrees to sow, cultivate, irrigate, harvest and thresh in a good and farmer-like manner all and singular the hard wheat so to be furnished him as above; and after the said wheat shall have been harvested and threshed as aforesaid, to sell and deliver the same and all thereof so harvested and threshed to the said party of the first part, to be paid for by the said party of the first part at the rate of —— per hundred weight, f. o. b. cars ——.

"Third.   The said party of the first part hereby agrees to pay to the said party of the second part the sum of ——— per hundred weight for all hard wheat, cultivated, irrigated, harvested and threshed on the premises of the said party of the second part, and which may be delivered f. o. b. cars to the said party of the first part in good condition at any time during the months of ———, A. D. 190—.

"In witness whereof, the said party of the first part has hereunto caused its corporate name and seal to be affixed by its proper officers on this ———, A. D. 190—, and the said party of the second part has hereunto fixed his hand and seal at ———, this —— day of ———, A. D. 190—."

The contract was filled in with Farr's name as party of the second part, the number of pounds of seed wheat delivered to him, and the price per hundred ($1.15) that was to be paid for the crop in the fall.   One Connolly signed for the company, and North attached his signature after Farr's, either as a party, or as a witness.   North also indorsed the note for the seed wheat.   He testified: "I was anxious to see the fellow get a crop, and I signed the note personally so that he could get the seed wheat at that time.   In my presence, Mr. Connolly agreed to purchase the wheat, and agreed upon the price he would pay for the wheat; that is, the price to be allowed Mr. Farr, and to be paid to me after deducting the amount of the note. * * * If I signed the contract for the sale of the wheat, I did it as the agent of the mortgagee."   He says that in indorsing the note he did not intend to waive the lien of the mortgage.

At the time of this transaction Connolly was the secretary of the defendant company, acting in the course of his employment, and had knowledge of appellant's mortgage.   He says that to induce North to indorse the note, he told him that he (North) had a mortgage, and he took no chances in indorsing the note.   Connolly ceased to represent the defendant company in August, 1904.

On September 30, 1904, Farr removed the wheat from the land on which it was grown, sold it to defendant company, and received the balance of the money, after deducting the amount of the seed wheat note. The respondent's miller received the wheat for the company, and none of the then officers or employees of the Babcock Company had any knowledge of the chattel mortgage. Connolly left with the company no note or memorandum of his agreement with North. Mr. Foster, the secretary of the Babcock Company, testified as follows: ''In the first place, when the wheat is received at the mill it is bought by the miller or some person, and duplicate tickets are made out, one of which is given to the man who hauls the wheat in, and the other one is put on file and turned in, taken in to the office; and when the party comes in to settle, the first thing to do is to look at the wheat book, and then we look to see whether he has contracts or not, and if he has, we settle according to that contract. If the contract calls for a specific price named in the contract, we pay that; otherwise we pay him the market price of that day; and, of course, we examine our ledgers and books to see what, if anything, these parties owe us, and of course, that is deducted, and a statement is made out to him showing the amount of wheat received and the price of it, and everything that is deducted, and he is given a check for the balance.''

We think the district court was right in directing a verdict for the defendant.

Section 3876 of the Civil Code is as follows: ''The lien of a mortgage on a growing crop continues on the crop after severance, whether remaining in its original state or converted into another product, so long as the same remains on the land of mortgagor.'' This section is the same as section 2972 of the California Civil Code, as amended in 1878; and in the case of *Horgan* v. *Zanetta*, 107 Cal. 27, 40 Pac. 22, the supreme court of California said: ''The crop had been removed from the land of the mortgagor at the time the attachments and executions

were levied on it by the (defendant) ; therefore, the lien of the mortgage had *prima facie* been extinguished. It therefore devolved upon (plaintiff) to remove this *prima facie* case by showing that the case at bar is an exception to the general rule. * * * It is true that when Cole attached he knew that there had been a mortgage on the crop; but he also knew that the lien had been extinguished by the removal of the crop from the land of the mortgagor, and he was not bound to look after the former rights of the mortgagee who had lost them by his own carelessness."

We think this decision is correct in principle, and there is nothing to be gained by the examination of other cases. Section 3876 was undoubtedly enacted to facilitate the business of dealing in grain. The mortgagee is protected by the provision that the lien shall continue after severance; but the moment he allows the grain to be taken from the land where it was grown, he, by such act, removes the principal means of identifying the same, and the property is *prima facie* free of encumbrance. If this were not so, no buyer would be safe in purchasing a load of wheat, because it would be next to impossible for him to learn where every bushel offered for sale was grown, and whether there had ever been a chattel mortgage on it.

We hold that where grain has been removed from the land of the mortgagor, the mere fact that the buyer had knowledge that it was once mortgaged is not alone sufficient to prevent his being a *bona fide* purchaser. He has a right to presume that the lien has been extinguished, and unless he has in some way estopped himself to deny the continued existence of the mortgage lien, he may safely purchase. In addition to this, it seems to us that, when North, as plaintiff's agent, agreed that the Babcock Company might buy this wheat, under North's own version of the transaction, if he did not waive the mortgage lien altogether, he at least bartered it for Connolly's promise to pay the balance of the purchase price over to him. We do not see how his principal can sue in conversion.

On April 23, 1906, defendant filed its memorandum of costs and disbursements in the case, as follows:

| Witness' Name. | Per Diem. | Mileage. | Total. |
| --- | --- | --- | --- |
| A. B. Renwick | $9 00 | ........ | $9 00 |
| W. C. Renwick | 9 00 | ........ | 9 00 |
| F. B. Connolly | 9 00 | ........ | 9 00 |
| Fred H. Foster | 9 00 | ........ | 9 00 |
| Subpœnas | 3 40 | | |

Total sheriff's fees, $3 40

Plaintiff thereupon moved the trial court to strike from said memorandum the per diem fees of A. B. Renwick, W. C. Renwick, Connolly and Foster, for the reason that it does not appear therefrom upon what days said witnesses were in attendance upon the court. He also moved to strike out the item of $3.40, for the reason that it does not appear how many subpoenas were served, where they were served, nor upon whom they were served. The court denied said motions, and plaintiff preserved the point by a bill of exceptions. He urges it for consideration here.

An inspection of this bill of costs shows that the defendant's witnesses claimed no mileage, but only for three days' attendance each. The record here shows that the trial began, verdict was returned and judgment rendered, all on the same day, April 23, 1906. In the case of *King* v. *Allen,* 29 Mont. 5, 73 Pac. 1108, Mr. Chief Justice Brantly, speaking for this court, said: "The rule is well established by the authorities that where, under a statute or rule of court, a requirement is made that, in order to recover costs, the party claiming them must, within a specified time, serve upon his adversary and file with the clerk a memorandum of the items thereof, duly verified, such memorandum is *prima facie* evidence that the items were necessarily expended, and are properly taxable, unless, as a matter of law, they appear otherwise upon the face. The burden of overcoming this *prima facie* case rests upon the adverse party,

and the party filing the memorandum is required to furnish further proof only in rebuttal. Hence upon the trial of a motion to tax costs, if the adverse party does not overturn the *prima facie* case made by the verified memorandum, the objection should be overruled."

Under section 1866 of the Code of Civil Procedure, the items complained of could be taxed, and it devolved upon the plaintiff to show that they were not properly taxed. This he did not attempt to do. He argues, however, that the rule laid down in *King* v. *Allen* should not be applied where the charges do not appear on their face to be proper and necessary; but that in such cases the burden should be on the claimant, and not on the moving party, and, if he fails to introduce evidence to justify and sustain his charges, they should be stricken out on motion. To accept this contention of the appellant would be to reverse the rule already adopted. As a matter of law, these items appear to be properly taxable; therefore, the burden of showing that they are not so was upon the appellant.

The judgment of the district court of Yellowstone county is affirmed.

*·Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.·

