KELLY, Respondent, *v.* CITY OF BUTTE, Appellant.

(No. 3,023.)

(Submitted November 1, 1911. Decided November 11, 1911.)

[119 Pac. 171.]

*Municipal Corporations—Injuries to Property—Notice—Measure of Damages—Instructions—Objections—Review—Costs—Maps.*

Municipal Corporations—Injuries to Property—Notice of Injury—"Defect."
  1.  Where plaintiff sued defendant city for flooding his mine, by reason of a defective plan adopted for the construction of a sewer, the cause of the injury was not a "defect," within Revised Codes, section 3289, providing that notice of claim for injuries must be given before the city shall be liable for damages for any defect in a bridge, street, public work, etc.

Same—Notice—Statutes.
  2.  Revised Codes, section 3289, providing that notice of claim for injuries must be given to a city or town before it shall be liable for damages caused by any defect in any bridge, street, public work, *etc.,* having been enacted under a title "An Act relating to actions against cities and towns for damages to persons injured on streets and other public grounds by reason of the negligence of any public officer, agent, or employee in any city or town in Montana" (Laws 1903, c. 93), such section applied only to injuries to persons, as distinguished from injuries to property.

Same—Actions—Question for Jury.
  3.  In an action against a city for the flooding of plaintiff's mine during the progress of work in the construction of a sewer, whether such flooding resulted from the city's negligence in carrying out a general plan of excavation for the extension of its sewer, without providing an efficient method to protect the ground from waters flowing down a gulch from above the excavation, *held* for the jury.

Same—Actions—Damages—Measure.
  4.  In an action against a city for flooding plaintiff's mine, the measure of plaintiff's damages was such an amount as it would cost to put

the mine in the same condition it was in before it was flooded, with interest in the discretion of the jury.

Appeal and Error—Objections to Instructions—Sufficiency.

5. Where, in a suit for flooding plaintiff's mine, plaintiff sought to recover the cost of repairing the damage, and the court charged that he was entitled to recover his necessary and reasonable expenditures in that behalf, an objection that it was not shown that the expenditures were reasonable was special, and could not be considered on appeal, where the only objection at the trial was that certain items included in the amount sued for were not proved to be reasonable.

Same—Review—Harmless Error—Instructions.

6. Where, in an action against a city for flooding plaintiff's mine, it appeared that the jury must have deducted from plaintiff's damages the amount of the necessary damages reimbursed to plaintiff from D., the owner of an undivided half interest in the mine, defendant was not prejudiced by the refusal of an instruction that in no event could plaintiff recover the amount so received.

Costs—Disbursements—Map.

7. Where a map of the premises in question is reasonably necessary to explain the situation, the reasonable cost of making the map may be taxed as a disbursement, as authorized by Revised Codes, section 7169.

Same—Evidence as to Expenditure.

8. An original verified memorandum of the cost of a map, made to explain the situation, is *prima facie* evidence that the amount charged was necessarily expended; and the burden is on the party objecting to the taxation thereof to overcome the same.

*Appeal from District Court, Silver Bow County; J. B. Mc-Clernan, Judge.*

ACTION by R. P. Kelly against the City of Butte. Judgment for plaintiff, and defendant appeals. Affirmed.

*Messrs. H. Lowndes Maury, John A. Smith,* and *N. A. Rotering* for Appellant, submitted a brief; *Mr. Rotering* argued the cause orally.

*Messrs. Nolan & Donovan* submitted a brief in behalf of Respondent; *Mr. L. P. Donovan* argued the cause orally.

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action sets forth that on the 25th day of September, 1905, plaintiff was the owner of a leasehold interest in the Ophir quartz lode mining claim, situated in the city of Butte, together with a shaft thereon sixteen feet east of a natural watercourse which passed over said mining claim. Defendant

entered upon the construction of a public sewer over such mining claim and along the natural watercourse. Plaintiff had a watertight wooden flume, which he used for conducting the water across his claim. Defendant removed the flume, dammed the waters so as to conduct them across the claim by means of a trough, and dug an excavation in the bed of the watercourse, in which to lay the sewer. "On the 22d day of September, 1905, and after the excavation for its sewer had been made by the defendant across said claim, it negligently permitted the dam to be washed out and the troughs to be carried away, and did negligently permit the water to run in said excavation or ditch without flume or sewer to prevent it from seeping into and flooding plaintiff's mine and underground workings. On September 25, 1905, owing to the negligence of the defendant, the waters broke into and flooded plaintiff's mine," causing injury, etc. It is also alleged that plaintiff gave defendant *verbal* notice of the time when and the place where said injury occurred, and on February 7, 1906, presented an itemized claim for damages. The cause was tried to the district court, sitting with a jury. A verdict for $1,000 was returned in favor of plaintiff, and from a judgment on the verdict, and an order denying a motion for a new trial, defendant has appealed.

1. It is contended that the notice given to the city was insufficient. No notice was necessary. Section 3289, Revised Codes, [1] providing that notice of claim for injuries must be given to a city or town before it shall be liable for damages, refers, in terms, to any "defect" in any bridge, street, public works, etc. Neither the complaint nor the evidence in this case discloses any defect in the public works then being prosecuted by the defendant. The injuries resulted from the manner in which the work was conducted in accordance with the plan adopted by the city. Under such circumstances, no notice was necessary. See, as an analogous case, *Pye* v. *City of Mankato*, 38 Minn. 536, 38 N. W. 621, where the court said: "There is nothing suggesting that this language was intended to embrace injuries resulting to adjacent property from conditions which do not render the street or highway defective as such."

2. There is another reason why no notice was necessary. The statute in question was not intended to apply to cases of injury to property. In the case of *Butte Machinery Co.* v. *City of Butte,* 43 Mont. 351, 116 Pac. 357, we held that it did so apply, following the decision of the supreme court of Minnesota, in *Nichols* v. *City of Minneapolis,* 30 Minn. 545, 16 N. W. 410, which clearly appears to have been correctly decided, in view of the phraseology of the statutory provision there in question. But counsel for respondent in the instant case have called our **[2]**    attention to the fact that our statute, as enacted, bore the title, "An Act relating to actions against cities and towns for damages to *persons* injured on streets and other public grounds by reason of the negligence of any public officer, agent or employee in any city or town of Montana." (Italics ours.) (Laws 1903, Chapter 93, p. 165.) This title clearly limits the scope of the Act. It is our duty to hold the Act constitutional, if possible, and that can only be done by limiting the effect of its general language, so as to conform to its title. This point was not called to our attention when the case of *Butte Machinery Co.* v. *City of Butte, supra,* was decided. That case is overruled.

3. It appears from the testimony of Kelly, the plaintiff, that when he took possession of the Ophir workings, there was a box flume, extending from the end of the Buffalo gulch sewer, as completed, on, a distance of about sixty-five feet, down the gulch. This flume was in the bed of the gulch, and was amply sufficient to carry off the water. When the city began the work of extending the sewer, its officers and employees took up the old flume and laid it to one side, for the purpose of excavating in the bed of the gulch where the flume had formerly been laid. They then dammed up the mouth of the storm sewer, so that the water rose therein to a height of three feet, and "put in a V-shaped trough to carry the water off the top of the ground, so that they could work under it." Subsequently an excess of water came down the sewer, carrying away the dam and trough, and running thence into the excavation made for the extension of the sewer. This extension was then about three feet deep. The water so

ran from Sunday to Wednesday, at which time the plaintiff informed the city engineer of the existing conditions, and was told that "he couldn't help it just then; that it had to be that way." After the water soaked through the surface, it eventually broke into the Ophir shaft, thus causing the damage of which complaint is made. Prior to this, however, and while the water was still running in the bed of the gulch, plaintiff informed the street commissioner of the fact, and "that I expected it would break in, in the course of time." Mr. Farmer, the street commissioner, said "he couldn't help it; they hadn't got the timber there to put in the boxes they intended to put in, and he would have to let it go until such time as he got things in shape to put in the sewer."

It is urged that the evidence is insufficient to support the judgment, for the reason "that there is no evidence showing or tending to show that the water flowed through the trench for a sufficient length of time after the trough was carried away to have enabled the city employees to remedy the same." This contention is based upon a conclusion of counsel, drawn from other testimony in the case, that the water flowed into the excavation for a period of less than twenty-four hours. There are two answers to counsel's contention, *viz.:* (1) The jury was justified in believing the testimony of Kelly, just quoted; and (2) his evidence tends to show that the injury to his property was occasioned by the negligence of the defendant in carrying out its general plan of excavation for the extension of the sewer without providing any efficient method of protecting the ground from the waters flowing down the gulch from above the excavation. [3] Whether or not this was negligence was, we think, a question for the jury to determine. The old flume carried off the water, and the jury was justified in finding, as it seems to us, that the city, in the exercise of ordinary care, should have provided, in lieu thereof, a new method, which would be equally, or at least substantially, as effective.

4. Kelly also testified that after he "got the water out" he again began to cross-cut, and "the jar of blasting, I presume,

caused this dirt to give way and let the water all in on me again.''
It is argued that there is not anything to show that the second
flooding was caused by any act of the city of Butte; but we are
satisfied from the evidence that both ''floodings'' may fairly and
reasonably be attributed to the same act of negligence.

5. We think there is testimony in the record to justify a finding
that the extension of the Buffalo gulch sewer was within the
limits of the city of Butte.

6. The court gave the following instruction: ''(9) In assess-
ing plaintiff's damages, if you find he is entitled to recover, you
shall take into consideration the amount of his necessary
and reasonable expenditures, made by him to put the property
in the same condition in which it was before flooded, and you
shall assess his damages in such amount, not to exceed, however,
$1,726,. and in your discretion you may allow interest at the rate
of eight per cent per annum from the 25th day of December,
1905, to this date.'' As this instruction was originally framed
by the court, it read ''$1,760,'' but, on objection by defendant,
the amount was changed to $1,726. Defendant objected to the
instruction, for the reason ''that certain items included in the
amount were not proved to be the reasonable expenditures in such
cases, and for the further reason that the jury, by this instruc-
tion, is permitted to assess in plaintiff's favor the damages sus-
tained by his partner, Dockstader.'' It is now urged: ''Plaintiff
testified that he paid Martin Ryan the sum of $76, to Thomas
Slattery, $74, to Jerry Shea, $48, to Ed. Ryan, $52, and to
Harvey Sullivan, $44; the total being $294. No evidence was
offered that these sums were reasonable, or the going or reason-
able wages for similar work, and there is nothing to show that
this sum of $294 is not included in the verdict.'' We think the
instruction as given states a correct rule of law. The objection
now urged is special, and should have been made in the
court below. The objection made, that ''certain items included
in this amount were not proved to be reasonable,'' did not call
the trial court's attention to the particular items to which objec-
tion is now made.

7. The defendant tendered the following instruction, which was refused: Instruction No. 10: "In no event can you give [6] plaintiff Kelly a verdict for the sum of $740, received by him from Dockstader in the payment of part of the damages sustained by the premises in question." The testimony shows that one Floeres had a lease for a year upon the Ophir ground. He agreed in writing to convey an undivided one-half interest therein to Kelly and Dockstader, in consideration of their agreement to sink the shaft to an additional depth of thirty feet and make a cross-cut upon the property. After the sinking was completed and the cross-cut partially made, the mine was flooded. Dockstader does not appear to have taken any interest in the matter, and Kelly paid out a large sum of his own money to put the mine in shape to continue his contract work. He testified that it was necessary to clean out the shaft and the cross-cut, in order to save his rights under the contract and obtain a one-half interest in the lease. Dockstader paid no part of the expense of cleaning out the mine, but after the work of sinking and cross-cutting was completed he conveyed his interest in the lease to Kelly in settlement of the amount which they agreed upon as his share of the expense incurred by reason of the flood, to-wit, $742. It is contended, in support of the claim that instruction No. 10 should have been given: "Before Kelly can recover the damages sustained by his partner, Dockstader, he must plead, as well as prove, an assignment of Dockstader's interest to him." We do not, however, understand that the action was brought or prosecuted on the theory that plaintiff was suing as assignee of Dockstader's interest. As we read his testimony, his claim is that he made all the expenditures out of his own resources, in order to save or preserve his individual interest in the lease, which would otherwise have been forfeited for failure to complete the cross-cut. At any rate, the matter becomes practically immaterial when the record is carefully examined. We are not able to ascertain how the court arrived at the amount, $1,760, or counsel at the smaller amount, $1,726. Kelly testified that he expended the sum of $210 for rent of boilers and engines and

moving the same, $200 for fittings and lumber, $406 for labor, $468 for fuel, $18 for a pump section, and that his own labor was reasonably worth $450. The sum of these amounts is $1,752. He afterward said, on cross-examination, that the amount testified to as having been paid out for labor was too large by $8, thus leaving $1,744 as the full amount of his claim. His testimony was not in itself contradictory or unreasonable, and the jury evidently believed it. No attempt was made to disprove or discredit it by other witnesses. The amount of the verdict was $1,000, as heretofore stated. Plaintiff was entitled to recover the entire amount paid out by him, if entitled to recover at all, unless Dockstader's interest was to be deducted; and, although the court refused to direct the jury to deduct the $742 allowed to the latter, they evidently did so without such instruction. Deducting Dockstader's portion, or $742, the balance due Kelly was $1,002, or $2 more than the amount of the verdict. Of this defendant cannot complain. Neither can it complain that instruction No. 10 was not given, for the reason that it was not prejudiced by the refusal of the court to give it.

8. Plaintiff filed his duly verified memorandum of costs and disbursements, in which the following item appears: "Frank [7] Donohoe, for reasonable expense for making a map required and necessary to be used on trial of cause, $20." Thereafter defendant filed a motion to tax the costs and reduce this item to $5. This motion was supported by the following affidavit:

"R. R. Vail, being first duly sworn, deposes and says: That he is and has been a civil and mining engineer for the past fifteen years; that as such he is familiar with and knows the reasonable cost and expense of making and preparing maps; that he saw the map offered by the plaintiff and introduced in evidence on the trial of the above-entitled action. That the reasonable cost of making said map offered in evidence by the plaintiff and used upon the trial of the case was not more than five (5) dollars. Deponent further says that this does not include any examination that said Frank Donahoe may have made of the premises in

question and does not include any survey that the said Donahoe may have made nor the collection of any data, but simply the reasonable expense for making the said map.

"R. R. VAIL."

The court refused to reduce the amount. We find no error in this action of the court. The reasonable expenses for making a map, if required or necessary to be used, are properly taxable by virtue of section 7169, Revised Codes. The question of fact raised by the affidavit just quoted was for the district court to decide. The original memorandum, verified as it was, was *prima facie* evidence that the amounts named therein were necessarily expended. The burden of overcoming such showing was [8] on the defendant. The district court found that the burden had not been sustained, and we are not disposed to interfere with the finding. (See *Isman* v. *Altenbrand,* 42 Mont. 188, 111 Pac. 849; *Brande* v. *Babcock Hardware Co.,* 35 Mont. 256, 119 Am. Rep. 858, 88 Pac. 949; and *King* v. *Allen,* 29 Mont. 5, 73 Pac. 1107.)

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.