DEWELL, Appellant, *v.* NORTHERN PACIFIC RY. CO., Respondent.

(No. 3,843.)

DEWELL, Respondent, *v.* NORTHERN PACIFIC RY. CO., Appellant.

(No 3,902.)

(Submitted December 8, 1918. Decided January 15, 1918.)

[170 Pac. 752.]

*Railroads—Killing Livestock — Statutes — Constitution—Equal Protection of Laws—Delegation of Law-making Powers—Statute of Limitations—Waiver—Costs—Interest.*

Railroads—Killing Livestock—Attorney's Fee—Statute—Constitution.
1. *Held,* that section 4313, Revised Codes, allowing an attorney's fee as part of the costs of plaintiff, in case he is successful, in an action against a railroad company for cattle injured or killed on its tracks, but not allowing it to the company if he is not, is a denial of the equal protection of the laws, and therefore unconstitutional.

Statute of Limitations—Waiver—Stipulation.
2. The defense of the statute of limitations may be waived by stipulation, and if so waived, the agreement will not be set aside on the ground that it was entered into under a mistake as to the law.

Railroads—Killing Livestock—Statutes—Constitution.
3. Section 4312, Revised Codes, which provides that a railroad company shall be liable to the owner of cattle killed or injured on its tracks for failure to keep the record book prescribed in section 4311, and that the court or jury "may in its or their discretion render verdict and judgment for the amount of the value of such animal," etc., is not unconstitutional as delegating law-making powers to the court or jury, *i. e.,* to determine whether the statute shall be effective as a law of the state or not.

Same—Killing Livestock—Record Book—Duty to Keep.
4. The statute imposing upon railway companies operating in the state the duty to keep a record book in which to record the dates on which animals were killed or injured, on railway tracks, their sex, brands, *etc.* (section 4311, Rev. Codes), is a general police regulation, analogous to one requiring fencing and cattle-guards, and as such valid.

Same—Complaint—Negligence.
5. In an action brought under the provisions of section 4312, holding a railway company liable for cattle killed on its tracks, whether done negligently or not, for failure to keep the record book referred to in paragraph 4 above, plaintiff need not allege or prove negligence.

Same—Failure to Keep Record Book.
6. The fact that the owner of cattle killed has actual knowledge of the killing does not prevent him from invoking the provision of sec-

tin 4312, Revised Codes, which imposes absolute liability for failure to keep the record book prescribed in section 4311.

Appeal and Error—Instructions—Evidence—Harmless Error.
7.   The admission of immaterial evidence and the giving of inapplicable instructions, none of which reflected upon the issues up for trial, were harmless.

Costs—Refusal to Allow—When Error.
8.   Refusal to allow an item of costs for sheriff's fees and mileage, on the ground that the items were not set forth with sufficient particularity, was error.

Same—Jury—View of Premises.
9.   The expense of taking the jury to view the premises is not taxable as costs under Revised Codes, section 7169, in the absence of a custom or rule of court authorizing it.

Same—Cost Bill—*Prima Facie* Correct.
10.   The cost bill makes out a *prima facie* case in favor of the items therein contained, the burden of overcoming it being upon the unsuccessful party.

Same—Interest—Jury—Discretion.
11.   The allowance of interest in an action for killing cattle on a railway track, lies within the discretion of the jury.

*Appeal from District Court, Broadwater County; John A. Matthews, Judge.*

ACTION by Scott Dewell against the Northern Pacific Railway Company.   From the judgment and certain orders both parties appeal.   Order denying new trial affirmed.   Judgment modified and affirmed.

*Mr. Joseph R. Wine, Jr.,* for Appellant, submitted a brief and argued the cause orally.

The statute allowing attorneys' fees as a penalty imposed upon railway companies for a violation of a police regulation requiring them to fence their tracks is not unconstitutional.   The *Mills v. Olsen Case* (43 Mont. 129, 115 Pac. 33) is the only Montana case known to the writer holding a statute giving attorneys' fees to a successful litigant unconstitutional.   That case, as well as a California case cited therein, is based upon the case of *Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 150, 41 L. Ed. 666, 17 Sup. Ct. Rep. 255.   That was a case which went to the supreme court of the United States from the state of Texas to test the constitutionality of a statute imposing an attorney's fee not to exceed

ten dollars, in addition to costs upon railway corporations, omitting to pay certain claims within a certain time after presentation, and which applied to no other corporation or individuals. The court held that statute unconstitutional, but specifically excepted cases where the statute imposes a penalty upon the railway company for some duty which it has violated, citing *Missouri Pacific Ry. Co.* v. *Humes,* 115 U. S. 512, 29 L. Ed. 463, 6 Sup. Ct. Rep. 110. In the latter case it was held that the fencing statute, there considered, does not deprive the company of property without due process of law in allowing the owner of the stock killed to recover damages in excess of its value; nor does it deny to the company the equal protection of the law, and decides that the legislature of the state may fix the amount of damages, beyond compensation, to be awarded to a party injured by the gross negligence of a railroad company, failing to provide suitable fences and guards on its road, or prescribe the limit within which the jury in assessing the damages may exercise their discretion. The additional damages are in the way of punishment to the company for its negligence, and it is not a valid objection that the sufferer instead of the state receives them. (See, also, *Dell* v. *Marvin,* 41 Fla. 221, 79 Am. St. Rep. 171, 178, 26 South. 188; 1 R. C. L., secs. 115, 135.) In *Kansas City S. Ry. Co.* v. *Anderson,* 233 U. S. 325, 58 L. Ed. 983, 34 Sup. Ct. Rep. 599, the questions presented by this appeal are decided in appellant's favor. See, also, *St. Louis etc. Ry. Co.* v. *Wynne,* 224 U. S. 354, 42 L. R. A. (n. s.) 102, 56 L. Ed. 799, 32 Sup. Ct. Rep. 493, distinguished from the case at bar by the *Anderson Case, supra.* An analogous case is *Mobile & O. R. R. Co.* v. *Brandon,* 98 Miss. 461, 42 L. R. A. (n. s.) 106, 53 South. 957. A stronger case, perhaps, than any yet cited, is *Missouri & N. A. R. R. Co.* v. *State,* 92 Ark. 1, 135 Am. St. Rep. 164, 31 L. R. A. (n. s.) 861, 121 S. W. 930.

*Messrs. Gunn, Rasch & Hall* and *Mr. W. W. Patterson,* for Respondent, submitted a brief; *Mr. Patterson* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover damages for cattle alleged to have been killed by the railway company. Plaintiff appeals from a judgment in his favor, and seeks to have reviewed an order of the trial court striking from his cost bill an item of $50 claimed as an attorney fee, and an item of $1.10 for "sheriff's fee serving subpoenas." The defendant appeals from the judgment and from an order denying it a new trial.

1. The court below held that the statute allowing the attorney [1] fee as part of plaintiff's costs is unconstitutional. Section 4308, Revised Codes, requires a railway company to build and maintain a good and legal fence on each side of its line of road, and to maintain cattle-guards at crossings. Section 4309 declares the liability of a railway company for domestic animals killed or injured by reason of the company's negligence in operating its trains, and also prescribes a rule of evidence in such cases. Section 4313 provides: "   *   *   *   And whenever any of the livestock referred to in this Chapter shall be injured or killed, as therein recited, and the owner or owners thereof shall thereafter institute an action for the recovery of the loss or damage so sustained by him, or them, the court in which such action shall be brought shall, if the plaintiff in such action recover a judgment against the defendant therein, tax, as part of the costs therein, a reasonable sum to be fixed by the court as a fee to the plaintiff's attorney for conducting said action," *etc.* It is to be observed that this statute allows an attorney fee to the property owner if he is successful in the litigation, but does not allow it to the railway company if it is successful.

In *Gulf, C. & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 150, 41 L. Ed. 666, 17 Sup. Ct. Rep. 255, a statute of Texas having the same purpose in view and very similar in its provisions, was held to violate the Fourteenth Amendment to the Constitution of the United States. That decision is conclusive upon us in this instance. (See, also, *Mills* v. *Olsen,* 43 Mont. 129, 115 Pac. 33.)

The statute is to be distinguished from the one considered in *Doty* v. *Reece*, 53 Mont. 404, 164 Pac. 542, which awards the attorney fee to the successful litigant, whether plaintiff or defendant; and also from a statute which imposes the attorney fee as a part of the penalty for the violation of a police regulation.

Section 4313 applies as well to an action brought for damages for animals killed by negligent operation of trains as to an action brought for damages arising from a failure to build or maintain fences or cattle-guards. If it applied only to cases arising out of the violation of the police regulation prescribed by section 4308, it would not be open to the attack made upon it; but because it applies equally to ordinary negligence cases, it falls within the class of legislation condemned by the supreme court of the United States in the *Ellis Case*, above.

2. Defendant complains of an order of the trial court denying its application to file an amended answer in which the statute of limitations was pleaded as a defense. The defense is one [2] which may be waived, and an agreement to waive it is valid. (*Parchen* v. *Chessman*, 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631.) The defense had been waived by stipulation, and counsel cannot now be heard to say that it was entered into under a mistake as to the law, and will not be heard to repudiate the agreement, or to insist that its effects be frittered away by the application of ultra technical rules of construction.

3. It is alleged in the complaint and admitted in the answer [3] that the railway company failed to keep a record book and record therein the dates upon which any domestic animals were killed or injured by it, their sex, brands and descriptions, as required by section 4311, Revised Code. Section 4312 declares that for the failure to keep such book and make the required entries, the railway company shall be liable to the owner of any domestic animal killed or injured by it, whether done negligently or not, and then proceeds: "And the court or jury before whom any action is tried for the recovery of damages

on account thereof, may, in its or their discretion, render verdict and judgment for the amount of the value of any such animal or animals so killed, or the amount of damages sustained by reason of any injury thereto.''

It is insisted that this section is unconstitutional in that, by its terms, the legislature has delegated law-making authority, *viz.*, the authority to the court or jury to determine whether the statute shall be effective as a law of this state. If by a fair construction of the language of this section it must be said that the authority to make this statute effective, or a dead letter, is lodged in the discretion of the court or jury, then defendant's contention must be upheld, for it is elementary that such authority belongs to the legislature, or to the people under the initiative and referendum, and cannot be delegated.

The statute imposing upon every railway company operating [4] in Montana the duty to keep a record book and make therein a record of every domestic animal killed or injured by it was first enacted in 1881 (Laws 1881, p. 68), and has been upon our statute books ever since. The original Act imposed the duty and prescribed the penalty for noncompliance in a single section. The penalty was liability in double the value of the animal killed. That Act was superseded by another, entitled "An Act to provide for payment for stock killed by the railroads," approved March 10, 1887. (Comp. Stats., Fifth Div., sec. 720 *et seq.*) Section 720 declared the duty in substantially the same terms as the Act of 1881. The penalty for noncompliance was imposed by section 721 in the language now found in section 4312, Revised Codes, and paraphrased above. With slight amendments, not material here, those sections were carried into the Civil Code of 1895 as sections 953 and 954, and into the Revised Codes of 1907 as sections 4311 and 4312. It is fair to presume that the legislative assembly of 1895 had the same purpose in view in writing section 721 into the Codes, as the assembly of 1887 had in enacting the measure in the first instance, and to determine that intention, if possible, we should look to the general character

of the legislation, its history, the title of the Act, and the apparent purpose which it was to subserve.

(a) The character of the Act: We think that the statute is a general police regulation, analogous to one requiring fencing and cattle-guards, and as such its validity cannot be questioned. (*Missouri Pac. Ry. Co.* v. *Humes,* 115 U. S. 512, 29 L. Ed. 463, 6 Sup. Ct. Rep. 110; *Minneapolis & St. Louis Ry. Co.* v. *Beckwith,* 125 U. S. 26, 32 L. Ed. 585, 9 Sup. Ct. Rep. 207.) The statute was evidently designed to promote the welfare of the state by protecting its livestock industry—one of the principal industries of the commonwealth. At the time it was enacted, vast areas of Montana were given over exclusively to general range purposes. The lands were not fenced. Herds of cattle roamed about at will. The railroads were not then required to inclose their tracks, and, in the absence of some positive law requiring evidence of the fact to be preserved, the death of an animal killed by a railroad would ordinarily never become known to the owner. As soon as the carcass was buried by the employees of the road, all trace of the wrongful act, if any, disappeared, and the owner was deprived of his property, and to all intents and purposes was without remedy. While it is true that keeping the book and making the required entries would not tend directly to increase the safety of domestic animals running at large, the fact that the record was available as evidence against the road would tend to promote a higher degree of care in its operation to the ultimate benefit of the industry, and thus, by indirection at least, the purpose of the Act was to be accomplished. That the state may, in the exercise of its police power, protect and promote one of its principal industries cannot be gainsaid. Assuming the existence of the power, any reasonable means may be adopted for its exercise. If the purpose to be served is within the control of police power of the state, and the statute in question reasonably effectuates that purpose, the particular phraseology of the Act is of no great consequence.

In its facts this case is altogether dissimilar from *Colvill* v. *Fox,* 51 Mont. 72, L. R. A. 1915F, 894, 149 Pac. 496, *Hill* v. *Rae,*

52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826, and *Noble State Bank* v. *Haskell*, 219 U. S. 104, Ann. Cas. 1912A, 487, 32 L. R. A. (n. s.) 1062, 55 L. Ed. 112, 31 Sup. Ct. Rep. 186, but in our opinion the broad, general principle underlying each is the same, and this statute may be upheld as a valid police regulation.

In order to enforce the duty to keep this book and make the required record, the legislature was free to prescribe appropriate penalties; and the mode of enforcing the statute, whether at the suit of a private party or by public prosecution, and the disposition to be made of the amount collected, are merely matters of legislative discretion.    (11 R. C. L. 891.)

- It cannot be said that this statute imposes liability notwithstanding the railway company is without fault.   The liability is imposed as the means of enforcing obedience to the law.   If the book is kept and the proper entries made, the rule of absolute liability does not obtain.   In this respect the statute is different from the one considered in *Bielenberg* v. *Montana Union Ry. Co.*, 8 Mont. 271, 2 L. R. A. 813, 20 Pac. 314, and more nearly like the one considered in *Diamond* v. *Northern Pac. R. Co.*, 6 Mont. 580, 13 Pac. 367.

(b) History of the Act: From 1881 to the present time, the duty to keep the book and make the required record has been an absolute one.   From 1881 to 1887 the penalty for nonobservance of the duty was expressed in language too clear to admit of a doubt as to its meaning.   Every violation subjected the offending company to liability for double damages.   Section 721 itself declares that for such a violation the company "shall be liable to the owner or owners of the animal or animals so killed or injured whether negligently done or not."   This language, if standing alone, would clearly evidence an intention to establish a rule of absolute liability in every case of nonobservance of the law.   Long prior to the enactment of any of these statutes, experience had demonstrated that a police regulation without a penalty of some character for its breach was ineffectual for any purpose, and in view of this fact and the language quoted above,

we cannot believe that in substituting section 721 for the penalty clause of the Act of 1881, the legislature meant to leave to the caprice of court or jury whether the statute declaring the duty should or should not be entirely impotent.

(c) The title of the Act declares the purpose to be to provide for the payment of stock killed by railroads. In the absence of any certain, fixed liability for the violation of this Act, the stock owner had only his common-law action for damages for negligence, and the title would belie the purpose of the Act. In other words, if this Act does not create a liability, it accomplishes no purpose whatever.

(d) The apparent purpose of the Act: As already observed, the Act of 1881 fixed the measure of damages, and imposed the rule of double liability. In our opinion, by the concluding sentence of section 721 (4312) the legislature made a crude, clumsy attempt to substitute the rule of single liability or actual damages for the harsher rule of the original Act, leaving to the court or jury, as the case may be, a wide latitude for determining the amount of recovery in any given case.

4. By the express terms of this Act, it was not necessary for [5] plaintiff to allege or prove negligence. In this respect our statute differs from the statute of Idaho considered in *Wilson* v. *Oregon S. L. R. Co.*, 28 Idaho, 54, 152 Pac. 1062.

5. The penalty—absolute liability—is imposed to secure [6] obedience to the law, and the fact that the plaintiff had actual knowledge that his animals had been killed does not prevent him invoking the statute in this case. The Act makes no exception as against the owner who has actual knowledge, and we are not authorized to supply such exception. (*Memphis & Little Rock R. Co.* v. *Carlley,* 39 Ark. 246.)

6. There was an apparent attempt also to predicate liability upon the failure of the railway company to maintain sufficient [7] fences and cattle-guards; but there is no causal connection disclosed between the alleged negligence and the death of the cattle. The only issues presented for trial arose upon the questions of ownership of the cattle, their value, and whether they

were killed by the defendant company. The general verdict returned found every one of these issues in favor of the plaintiff, and upon any theory of the case such a finding was necessary to warrant a recovery; and though immaterial evidence was admitted upon the trial, and instructions were given which were not applicable, neither reflected upon the issues actually for trial, and the technical errors could not have prejudiced the rights of the defendant.

7. Costs: The trial court refused to allow plaintiff an item of [8] costs amounting to $1.10 for sheriff's fees and mileage, upon the theory that the cost bill did not set forth the items with sufficient particularity. In this the court erred. (*Brande* v. *Babcock Hardware Co.*, 35 Mont. 256, 119 Am. St. Rep. 845, 88 Pac. 949.) The court also erred in allowing as costs the [9] expense of taking the jury to view the premises where the cattle were killed. Such expense is not taxable as costs under section 7169, Revised Codes, in the absence of a custom or rule of court authorizing it. (*Montana O. P. Co.* v. *Boston & Montana Co.*, 27 Mont. 288, 70 Pac. 1126.) The cost bill itself made [10] out a *prima facie* case in favor of the other items, and imposed upon the defendant the burden of overcoming it. (*Kelly* v. *City of Butte*, 44 Mont. 115, 119 Pac. 171.) This it failed to do.

8. Interest was properly allowed. It was within the discretion [11] of the jury to allow interest, and such discretion was exercised in plaintiff's favor. (Sec. 6044, Rev. Codes; *Caledonia Ins. Co.* v. *Northern Pac. Ry. Co.*, 32 Mont. 46, 79 Pac. 544.)

The order overruling the motion for a new trial is affirmed. The cause is remanded to the district court, with directions to reduce the amount of costs included in the judgment by $3.90, and as thus modified the judgment will stand affirmed. Each party will pay his own costs of these appeals.

MR. JUSTICE SANNER concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.