STATE, APPELLANT, *v.* GEMMELL, RESPONDENT.

(No. 3,097.)

(Submitted March 7, 1912. Decided March 9, 1912.)

[122 Pac. 268.]

*Gaming—Horseracing—Wagering—Prohibition—Statutes—Construction.*

1. *Held,* under Laws of 1909, Chapter 92, page 121, that betting on horseraces in counties of the first class is allowed for only thirty days in any one year, and that said Act does not simply prohibit wagering, for more than thirty days, within the same inclosure.

*Appeal from District Court, Silver Bow County; Michael Donlan, Judge.*

DEMURRER to indictment against William Gemmell was sustained, and the state appeals. Reversed.

Cause submitted on briefs of counsel.

*Mr. Albert J. Galen,* Attorney General, for Appellant.

*Mr. W. B. Rodgers, Mr. C. F. Kelley, Messrs. Davies & Lyon,* and *Messrs. Frank & Cary,* for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

On the fourteenth day of August, 1911, the county attorney of Silver Bow county filed an information in the district court of that county, against the above-named defendant, charging as follows: "That during thirty days in the calendar year A. D. 1911, and before the eighth day of August, 1911, in the said county of Silver Bow, state of Montana, there had been bets and wagers made, reported, recorded, and registered upon the results of contests of speed, skill, and endurance of animals upon two certain inclosed racetracks both situated in Silver Bow county, Montana, to-wit, fifteen days upon the racetrack of the Butte Jockey Club and Fair Association, and seventeen days upon the racetrack of the Butte Driving Club, and that each and all of said bets and wagers were made, and all acts done in making, reporting, and recording said bets and wagers were done, within the respective inclosures where the said contests were held and upon the same day the said contest was held, and that thereafter during the said calendar year 1911, to-wit, on the eighth day of August, A. D. 1911, and before the filing of this information, at the said county of Silver Bow, state of Montana, the said defendant, William Gemmell, did willfully and unlawfully make a bet and wager of lawful money with one John Doe, upon the result of a contest of speed, skill, and endurance of animals, to-wit, horses, which said contest was held upon the said racetrack of the Butte Jockey Club and Fair Association, then and there an inclosed racetrack." It will be noted that the information charges in effect that thirty-two days' racing, upon which betting was allowed, had been had in Silver Bow county on inclosed racetracks, prior to the day on which the defendant is alleged to have laid a wager on the result of a horserace held upon the inclosed track of the Butte Jockey Club and Fair Association. The court below allowed a general demurrer to the information, for want of facts therein stated sufficient to constitute a public offense. The state appeals.

Did the court err in allowing the demurrer, which, under the peculiar practice in such cases, amounted to entering a judg-

ment in favor of the defendant? (Rev. Codes, sec. 9203; *People v. Long,* 121 Cal. 494, 53 Pac. 1097.) The question involved is whether it is unlawful to make a wager within an inclosed race-track upon the result of a horserace held within the same inclosure, after fifteen days' racing has been had on one inclosed track, in a county of the first class, and seventeen days' racing on another such track, in the same county.

The eleventh legislative assembly passed "An Act to prohibit the reporting or recording or registering of any bet or wager upon the result of any contest of speed or skill or endurance of animal or beast, within certain limitations therein stated, and to limit the number of days when such bets or wagers may be recorded, reported or registered, and providing penalties for the breach of the same." The Act provided:

"Sec. 1. It shall be unlawful to report or record or register any bet or wager upon the result of any contest of speed or skill or endurance of animal or beast, whether such contest is held within or without the state of Montana, unless said contest is held within an inclosed racetrack or fair-grounds, and said bet or wager is made and all acts done in registering, reporting and recording said bet or wager are done within the inclosure of the racetrack or fair-grounds where such contest is held, and upon the same day such contest is held.

"Sec. 2. Whenever, during fourteen days, whether consecutive or not, in any calendar year, there have been bets or wagers reported or recorded or registered upon the result of any contest of speed or skill or endurance of animal or beast upon any inclosed racetrack or fair-grounds, it shall thereafter be unlawful during such calendar year to report or record or register any wager or bet upon the result of any contest of speed or skill or endurance of animal or beast held within such inclosure."

Section 4 provided a penalty of fine and imprisonment for a violation of the Act. (See Laws 1909, p. 22.)

Subsequently, and at the same session of the legislative assembly, the Act just quoted was amended by the passage of

the Act under which the respondent was prosecuted. Section 1 of the Act as amended is the same as section 1 of the Act before amendment, save that the words "make" and "making" are inserted therein before the words "or report" and "reporting," respectively; and section 2 as amended reads as follows:

"Sec. 2. Whenever, during thirty days, whether consecutive or not, in any calendar year in any county of the first class and whenever, during fourteen days, whether consecutive or not, in any calendar year, in any county not a county of the first class, there have been bets or wagers made, or reported or recorded or registered upon the result of any contest of speed or skill or endurance of animal or beast upon any inclosed racetrack or fair-grounds, it shall thereafter be unlawful during such calendar year to make, or report or record or register any wager or bet upon the result of any contest of speed or skill or endurance of animal or beast held within such inclosure." (See Laws 1909, p. 122.)

It is contended by the attorney general that the intent of the legislative assembly was to limit wagering on the results of [1] contests of speed, in counties of the first class, to a period of thirty days; and that the construction to be placed upon the Act should be such as to carry this intention into effect; otherwise the statute becomes nugatory. On the other hand, it is argued for the respondent that the statute is plain and unambiguous in its terms and requires no construction. Counsel contend that no question of public policy is involved; that the public policy of the law is that which the legislature has declared to be the law. They contend that the last three words of section 2 of the amended Act, to-wit, "within such inclosure," refer to an inclosed racetrack or fair-grounds upon which wagering on contests of speed has already taken place, and that the statute simply prohibits betting, for more than thirty days, within the same inclosure. This interpretation of the law, if adopted, would of course result in a decision that, in first-class counties, thirty days of such wagering may take place on one

inclosed track, and an additional thirty days on another, and so on, until the calendar year expires. We fully agree with all the rules of statutory construction quoted in the brief of the counsel. They are elementary. But we are invited to examine and consider, also, the history of the legislation, and shall do so.

The Act, both before and after amendment, by section 1, prohibited, and was intended to prohibit: (a) Reporting, recording, or registering any bet or wager on any contest of speed of animals held outside of the state; (b) reporting, recording, or registering any wager upon the result of a contest of speed, skill, or endurance of animals, in the state, unless the contest is held within an inclosed racetrack or fair-grounds and all acts relating to the wager are done on the day of the contest and within the same inclosure. (*State* v. *Rose,* 40 Mont. 66, 105 Pac. 82; *State* v. *Sylvester,* 40 Mont. 79, 105 Pac. 86.) The legislation was and is commonly referred to as the ''anti-poolroom law.'' Section 2 of the Act, before amendment, provided *inter alia* that whenever, during fourteen days in any one year, wagers upon the result of contests of speed of animals had been reported, recorded, or registered upon any inclosed racetrack or fair-grounds, it should thereafter be unlawful, during the remainder of that year, to report, register, or record a similar wager on a contest of speed held within such inclosure. It will be noted that this Act applied to all counties alike, and that it is silent as to ''making'' a bet or wager, except in so far as section 3 declares that all who aid or abet in any transaction prohibited by sections 1 and 2 are deemed to be principals. If the Act had remained upon the statute books, unamended, the contention of the respondent might perhaps have been upheld. What, then, was the purpose of the legislature in amending it? That purpose was obviously fourfold, *viz.:* (1) To continue in force section 1, prohibiting poolselling on races held outside of the state, and also within the state outside of an inclosed racetrack or fair-grounds; (2) to enable Silver Bow county, the only county of the first class in the state, to hold race meetings at which wagers were laid, on inclosed tracks, for more than

fourteen days, to-wit, thirty days; (3) to declare "making" a wager an offense without invoking the provisions of section 3 of the Act; and (4) to limit the privilege of making, reporting, registering, or recording wagers on the results of contests of speed, held within the state, to a period of thirty days in counties of the first class, and fourteen days in all other counties. The words "within such inclosure," found in the last line of section 2 of the Act as amended, do not refer to the particular inclosure within which wagers have already been made, recorded, registered, or reported; these words are simply descriptive of the nature of the place, or the kind of place, in which wagering on contests of speed is to be permitted under any circumstances, to-wit, an inclosed racetrack or fair-grounds. Construed in the light of the history of the Act and the phraseology of the Act itself, they mean the same as "within any inclosure," or "within any such inclosure," or "within such an inclosure." They, in a certain sense, qualify and explain the word "contest"; that is to say, the contest must be held upon an inclosed racetrack or fair-grounds in order that the wagering shall be lawful within the meaning of the Act. The interpolation of the word "county" in the amended Act changed the entire meaning and scope thereof, and the legislature undoubtedly so intended. The presumption is that section 2 of the Act, before amendment, did not sufficiently express its intention to place a definite limit on the privilege of laying wagers on horseraces and other like contests. The evident purpose was to amend the so-called "anti-poolroom" law so as to make it clear that the privilege of laying wagers on the results of contests of speed was not alone limited to wagering in a particular inclosure for a certain number of days, but that the privilege was limited to thirty days in counties of the first class, and to fourteen days in other counties, under any circumstances. In other words, it was the intention to prohibit and make punishable the act of which this respondent was accused. This construction of the statute, while contrary to the argument advanced by counsel for the appellant in their printed brief, is in strict accord with all the authorities therein cited.

The attorney general has called our attention to the case of *State* v. *Dycer*, 85 Md. 246, 36 Atl. 763. If it be permitted to enter upon an inquiry concerning the motives which prompted the legislative body to enact this class of legislation, as evidenced by the general scope of the statute, this case is, perhaps, authority for his position. The Maryland court said: "The comprehensive, absolute, and unqualified expressions used by the legislature show that they regarded this species of gambling as a serious evil, and that they desired to suppress it. But for reasons which they considered satisfactory they saw fit to permit it under certain circumstances for the space of thirty days in any one year. Now, when they made in a guarded manner this exception to the general scope and operation of [the] statute, they certainly did not intend to nullify its provisions altogether. They conceded, to certain persons whose tastes and wishes they desired to gratify, a license under certain prescribed conditions for the space of thirty days in a year. During this period, if they complied with the statute, they would be exempt from penalties; its operation would be suspended so far as their actions were concerned. But it was not intended that they should have the power to free themselves entirely from its authority. If such were the case, the statute would be abortive and nugatory. If an owner of a racecourse can extend the exemptions of the statute to two racecourses, he has the same right to a dozen, or twenty, or as many more as he chooses to have. And consequently, instead of having a remission of the penalties of the law for only thirty days in a year, he would be beyond its control during the entire period. That is to say, it would not bind him at all, or in any respect. And a few persons co-operating together might with impunity carry on in every county in the state, without constraint or limit, the gambling denounced by the statute. We think that it would be an irrational construction, if we should give to an exception, which by its terms is limited in time and place, the effect of overthrowing the entire body of the law."

The district court was in error in allowing the demurrer, and its decision thereon is reversed. The demurrer should have been overruled.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.