PROVOSTX, J.
In 1902 or 1903 the plaintiff purchased 19 lots of ground in square bounded by Bienville, Murat, Conti, and Olympic streets in this city, and converted ■same into a summer amusement park for ■colored people, and has been operating this ■park ever since. This park is provided with the usual equipment of like places — promenade walks, flying horses, moving pictures, .-an auditorium or theater, an open pavilion for dancing and concerts, etc. To the question:
“What was the condition of the ground when .you bought it?”
1-Ie answered:
“It was uninhabitable, and nothing but ¡snakes, frogs, and everything of that kind infested the neighborhood. It was a swamp and wilderness.”
Since then, however, the neighborhood has ■been more or less built up, and some of the neighbors have complained to the committee of public order of the city council of the manner in which the place is being conducted, and the mayor has refused to detail any ■policeman for the place, with the result that the place has had to be closed up; since, by city ordinance, such places cannot be operated without a detail of police.
[1] The action of the mayor was based ■upon an opinion of the city attorney to the effect that the dancing pavilion in the park ■was a “dance hall” within the meaning of section 21 of the Oity Charter (Act No. 45 •of 1896), as amended by Act No. 99 of 1904, providing that:
“The city council shall not grant any privilege for the opening of any barroom, saloon, or dance hall, except upon the written consent of a majority of the bona fide property holders within three hundred feet measured along the street front of the proposed location of such barroom, saloon, concert saloon or dance hall.”
The said opinion of the city attorney, and the letter of instructions of the mayor to the inspector of police founded upon it, are in the record, and show that the ground of the refusal to allow a detail of police was that the plaintiff had not obtained the consent of a majority of the property owners within 300 feet of the pavilion.
Plaintiff alleges that his park is not a “dance hall” within the meaning of the said provision of the city charter, and that it has always been conducted in the most orderly manner, and that other parks of the same kind, both for whites and colored, are allowed to be operated in the city without such requirement of obtaining the consent of neighboring owners, and that this refusal to allow his park to go on is an illegal and unconstitutional discrimination against him, and a depriving him of his property; and he prays that the mayor and the inspector of police be enjoined from enforcing the said order.
The answer of the mayor and the inspector of police is to the effect that there has been no refusal to allow plaintiff’s park to go on in all of its features except that of the dancing pavilion, which is a “dance hall” such as cannot lawfully be operated without first obtaining the consent of a majority of the neighbors within 300 feet.
The evidence took a wide range. An attempt was made by the defense to show that liquors or beer are sold at the park. Why make such a showing, when the sole issue in the case is as to whether the dancing pavilion is or not a “dance hall” within the meaning of the above-quoted provision of the city charter, we cannot imagine. The attempt failed, however, except to this extent that the plaintiff admits that on week days his park is frequently leased to benevolent *983 and other associations for picnics, and that on such occasions beer is sold, but by permission of the city authorities. Attempt was also made to prove that the neighbors were disturbed by the loud talk and shouts and obscene language of the visitors to the park, especially in going to and returning from the park. Again, we are at a loss to conceive why attempt to prove matters outside of the issue. Not only is it not alleged that plaintiff’s place is a nuisance, but the answer contains an express disclaimer of intention to make any. such allegation. As a matter of fact, the plaintiff proved that the place had always been conducted in most orderly fashion, as, indeed, was conclusively shown by the fact that in its whole history there had never been a single arrest made within its precincts. There is evidence that while going to or coming from the place the visitors have occasionally made themselves obnoxious to the residents by loud talking and shouts, especially at the corner of Canal street where they take the street car, some four blocks from plaintiff’s park; but that is a matter with which plaintiff has no concern. It is not for him to police the streets leading to his park, or to exercise control over said visitors outside of his park.
On the main question, we are not satisfied that the said open pavilion is a “dance hall” as contended by the city. We think the “dance hall” to which the statute has reference is one distinctively such, for admission to which an admission fee is charged —not one which is merely one of the features of an amusement park, to which all the visitors are admitted free. Any one reading in the city charter that the “city council shall not grant any privilege for the opening of any barroom, saloon, concert saloon or dance hall” would readily understand what was meant by the term “dance hall,” and would not for a moment think of applying it to an open-air pavilion on a picnic ground or in a park designed solely for the holding of picnics. While xhaintiff’s park is not restricted to picnics, but on Sunday nights is run as. an amusement park for admission to-which an admission fee is required, still it is a park or open-air summer amusement resort, and the pavilion in question is part and parcel of it — merely one of its features. It is xierfeetly true that, to be a “dance hall,” within the meaning of this statute, the place need not necessarily be inclosed by walls, or, indeed, for the matter of that, have a roof; and it is also true that sounds coming from such an open pavilion would disturb the neighbors fully as much as from a closed hall. Nevertheless, the mind resists the application of said term to an open-air pavilion for dancing in a public park, to which admission is free to the visitors to the park. In like manner, a hall where free concerts were given nightly would not be a “concert saloon” within the meaning of the said statute, though the noise of the concert would be just as disturbing to the neighbors as if the lffaee were a “concert saloon” within the obvious meaning of the term as it occurs in said statute. In the present case, if xhaintiff sux^pressed the dancing, but allowed the music to go on, the noise would be just as disturbing to the neighbors; and yet no permit would be necessary in that case. And it is certainly not the dancing, out of the sight of the neighbors, that can offend. The statute does not aim at the noise of the music, nor at the orderly, and in all probability graceful, dances; but it aims at the objectionable features associated with the “barroom, saloon, concert saloon of dance hall” as such places are usually conducted in cities. These associations are absent from the open-air dancing pavilion of an amusement park free to the visitors to the park. The complaints made by the neighbors of plaintiff’s park have not been specially to *985 this dance feature of the park, but to the park as a whole. So far as appears, they care little or nothing whether the dance feature goes on or is stopped, if only the noises are silenced and the liquor selling is suppressed. But a detail of police cannot, under said statute, be refused to plaintiff’s park because of noises in it, and, so far as the suppression of liquor selling is concerned, the true way of accomplishing that is not by refusing a detail of police, but by seeing to it that the detail of police put an end to the illegal sale of liquors.
[2] The fact that this statute does not aim at the dancing nor the music, either together •or apart, but to the objectionable concomitants of the “dance hall” as usually conducted in cities, is indicated by the words by which we find this term “dance hall” accompanied in this statute, namely, “barroom, saloon and concert hall.” It is a fundamental principle in the construction of statutes that:
“The meaning of a word or phrase may be ascertained by the meaning of other words or phrases with which it is associated.” 26 A. & E. (2d Ed.) 608.
Under this rule, in Miro v. Keay, L. R. 10 Q. B. 594, a statute concerning houses of “public refreshment resort and entertainment” was construed to have reference solely to houses where the entertainment was designed to contribute to .the enjoyment or the refreshment, and not to houses for theatrical, musical, or other similar performances.
In Warden v. Dean of St. Paul, 4 Price, 65, an act which exempted “magnates and noblemen” from tithes was held not to extend to an ecclesiastical magnate, such as a dean, but to include only magnates of noble kind.
In Cotten v. James, Mav. & Mal. 273, 22 E. C. L. 305, a statute declaring a fraudulent “gift, delivery or transfer” of property -.to be an act of bankruptcy was held not to apply to a “delivery” to a bailee for safe custody; the reference being obviously to such deliveries as transferred the ownership of the property.
In Bridges v. Richardson, 2 M. S. 568, a statute prohibiting a “taking or destroying” the spawn of fish was held not to embrace a taking for the purpose of removal to another bed, as the word “destroying” with which the “taking” was associated indicated that the “taking” inhibited had to be of a mischievous or dishonest character.
We have disposed of the case as presented in the pleadings, confining ourselves to the sole issue raised, namely, as to whether the dancing pavilion, in plaintiff’s park, such as it has hereinabove been described and shown to be conducted, is a “dancq hall” within the meaning of the city charter, and, as such, requiring the consent of the neighboring property owners for being operated; and whether the mayor was justified in suppressing it on that ground. And we have reached the conclusion that it is not.
The judgment appealed from is set aside, and let an injunction be issued as prayed.