COLVILL, APPELLANT, *v.* FOX, RESPONDENT.

.(No. 3,526.)

(Submitted May 6, 1915. Decided June 1, 1915.)

[149 Pac. 496.]

*Horticulture—Fruit Pests—Police Power—Constitution — Due*
*Process of Law—Equal Protection of Laws.*

Horticulture—Police Power—Destruction of Fruit.
1. The protection of the horticultural industry from the ravages of insect pests or dangerous, contagious fruit diseases, by the summary
destruction of infected fruits, is within the limits of the police power
of the state.

[As to police power and the fourteenth amendment, see note in 25
Am. St. Rep. 882, 888. As to validity of statute providing for
destruction of insect pests, see note in Ann. Cas. 1913A, 412.]

Same—Destruction of Fruit Capable of Use.
2. It is not a valid objection to the enforcement of a police regulation that an article proscribed may be put to profitable use without
danger to anyone; hence where plaintiff had boxed apples affected
with scab, he was in no position to complain that the statute and the
regulations of the state board of horticulture were unreasonable in
permitting the destruction of the whole shipment, because a portion of
it was capable of profitable use.

Same—Executive Officer—Judicial Action—Constitution.
3. A state inspector of fruit pests, in determining whether fruit is
infected with a fruit disease, does not act judicially within the meaning
of the state Constitution.

Same—Taking Private Property for Private or Public Use.
4. *Held,* that the statutes authorizing the state inspector of fruit
pests to destroy fruit affected with diseases are not violative of section
14, Article III, state Constitution, providing that private property cannot be taken or damaged for public use without just compensation.

Same—Due Process of Law.
5. By "due process of law" is not meant necessarily "by judicial
process."

[As to what is due process of law, see notes in 24 Am. St. Rep. 538;
20 Am. St. Rep. 554; 122 Am. St. Rep. 904.]

Same.
6. The statutes referred to above, *held* not unconstitutional as operating to deprive the owner of infected fruit of his property without due
process of law, inasmuch as in his action against the inspector an opportunity was given him to determine the question whether the fruit
was diseased, and if not, to recover damages for its destruction.

Same—Police Power—Hearing—Notice.
7. That no provision for a hearing or for notice to the owner of infected fruit is provided for before his property is subjected to destruction, nor provision made for compensation, *held* not valid reasons for
declaring the statutes invalid.

Same—Equal Protection of Laws.
    8. The statutes above are not unconstitutional as denying the owner the equal protection of the laws, since they are general in terms, uniform in application, and comprehend all fruit similarly infected.

    [As to equal protection of laws, see note in 25 Am. St. Rep. 873; 14 L. R. A. 583.]

*Appeal from District Court, Missoula County; J. E. Patterson, Judge.*

Action by H. C. B. Colvill against Edwin Fox. Judgment for defendant and plaintiff appeals. Affirmed.

Cause submitted on brief of counsel.

*Mr. William Wayne,* for Appellant.

Citing *State* v. *Derry,* 171 Ind. 18, 131 Am. St. Rep. 237, 85 N. E. 765; *California Reduction Co.* v. *Sanitary Reduction Works,* 126 Fed. 29, 61 C. C. A. 91; *Connoley* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 46 L. Ed. 679, 22 Sup. Ct. Rep. 431; *Toledo W. & W. Ry. Co.* v. *City of Jacksonville,* 67 Ill. 37, 16 Am. Rep. 611; *Beebe* v. *State,* 6 Ind. 501, 63 Am. Dec. 391; *Chicago etc. Ry. Co.* v. *State,* 47 Neb. 549, 53 Am. St. Rep. 557, 41 L. R. A. 481, 66 N. W. 624; *Eidge* v. *City of Bessemer,* 164 Ala. 599, 26 L. R. A. (n. s.) 394, 51 South. 246; *Los Angeles County* v. *Spencer,* 126 Cal. 670, 77 Am. St. Rep. 217, 59 Pac. 202.

*Mr. D. M. Kelly,* Attorney General, and *Mr. J. H. Alvord,* Assistant Attorney General, for Respondent.

That the destruction of fruit determined by an inspector to be infected is not the taking of property for a public use without due compensation, contrary to Article III, section 14, of the Constitution of Montana, see *Commonwealth* v. *Alger,* 7 Cush. (Mass.) 53; *Livingston* v. *Ellis County,* 30 Tex. Civ. App. 19, 68 S. W. 723; *Chambers* v. *Gilbert,* 17 Tex. Civ. App. 106, 42 S. W. 630.

Nor is such a destruction of property a taking thereof without due process of law. (*Newark etc. Ry. Co.* v. *Hunt,* 50

N. J. L. 308, 12 Atl. 697; *Train* v. *Boston Disinfecting Co.,* 144 Mass. 523, 59 Am. Rep. 113, 11 N. E. 929; *Weil* v. *Schultz,* 33 How. Pr. (N. Y.) 7; *Leach* v. *Elwood,* 3 Ill. App. 453; *State* v. *City of Topeka,* 36 Kan. 76, 59 Am. Rep. 529, 12 Pac. 310; *Buttfield* v. *Stranahan,* 192 U. S. 470, 48 L. Ed. 525, 24 Sup. Ct. Rep. 349.) The exercise of the police power is not dependent upon notice or judicial determination previous to a destruction thereunder. (*City of Salem* v. *Eastern R. R. Co.,* 98 Mass. 431, 96 Am. Dec. 650; *Newark etc: Ry. Co.* v. *Hunt, supra; Surocco* v. *Geary,* 3 Cal. 69, 58 Am. Dec. 385.)

Acts conferring such power as that exercised by respondent upon boards and executive officers are universally upheld. (*Hymes* v. *Aydelott,* 26 Ind. 431; *State* v. *Griffin,* 69 N. H. 1, 76 Am. St. Rep. 139, 41 L. R. A. 177, 39 Atl. 260; *State* v. *Noyes,* 30 N. H. 279; *Walker* v. *Towle,* 156 Ind. 639, 53 L. R. A. 749, 59 N. E. 20; *Blue* v. *Beach,* 155 Ind. 121, 80 Am. St. Rep. 195, 50 L. R. A. 64, 56 N. E. 89.)

The mere fact that property when put to one use may be harmless, or even useful, does not prohibit the legislature from declaring some other use which is harmful a nuisance; and when property may thus be used to the injury of the property of others, courts uphold the validity of legislation reasonably intended to prevent such injury. (*Farnum's Petition,* 51 N. H. 376; *Bacon* v. *Walker,* 204 U. S. 311, 51 L. Ed. 499, 27 Sup. Ct. Rep. 289; *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238, 46 L. Ed. 171, 22 Sup. Ct. Rep. 120; *McCray* v. *United States,* 195 U. S. 27, 1 Ann. Cas. 561, 49 L. Ed. 78, 24 Sup. Ct. Rep. 769.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In March, 1914, H. C. B. Colvill brought to the city of Missoula certain apples owned by him which were boxed and intended for shipment to points within and without this state and to be sold in the open market. The fruit was seized and destroyed by Edwin Fox, and this action was instituted to recover

damages. The defendant made answer to the complaint that he was a duly appointed, qualified and acting inspector of fruit pests for the district including Missoula county; that the apples in question were affected with apple scab, a dangerous and contagious fruit disease, and one so designated by the state board of horticulture in its regulations promulgated pursuant to statute; that under the law and the regulations of the board it was the duty of the defendant, as such inspector, to destroy the apples to prevent the spread of the disease; and that the destruction was therefore lawful. To this answer a general demurrer was interposed, which was overruled, and plaintiff, electing not to plead further, suffered a judgment on the pleadings to be entered against him, and appealed.

The validity of the statutes for the regulation and protection of the horticultural industry and of certain regulations of the board is assailed upon these grounds:

(1) They are not valid police regulations.

(2) They lodge in the same officer judicial and executive powers.

(3) They permit private property to be taken for private use, and for public use without compensation.

(4) Under their provisions the owner is deprived of his property without due process of law and denied the equal protection of the laws.

1. It cannot be contended successfully that the protection of [1] the horticultural industry from the ravages of insect pests or dangerous, contagious fruit diseases is not well within the limits of the police power of the state. In *Noble State Bank* v. *Haskell*, 219 U. S. 104, Ann. Cas. 1912A, 487, 32 L. R. A. (n. s.) 1062, 55 L. Ed. 112, 31 Sup. Ct. Rep. 186, the court said: ''In a general way * * * the police power extends to all the great public needs. * * * It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.'' This language was

quoted with approval in *Cunningham* v. *Northwestern Improvement Co.,* 44 Mont. 180, 119 Pac. 554.

In Cooley's Constitutional Limitations, seventh edition, 829, the author announces the same doctrine as follows: "The police of a state, in a comprehensive sense, embraces its whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with the like enjoyment of rights by others."

The definition of Chief Justice Shaw has become a legal classic. In *Commonwealth* v. *Alger,* 7 Cush. (Mass.) 53, he said: "We think it is the settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it    *    *    *    shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property in this commonwealth,    *    *    *    is    *    *    *    held subject to those general regulations, which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient. This is very different from the right of eminent domain—the right of a government to take and appropriate private property    *    *    *    whenever the public exigency requires it; which can be done only on condition of providing a reasonable compensation therefor. The power we allude to is rather the police power, the power vested in the legislature by the Constitution to make, ordain and establish all manner of

wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same."

In *Bacon* v. *Walker,* 204 U. S. 311, 51 L. Ed. 499, 27 Sup. Ct. Rep. 289, the court, after reviewing many authorities dealing with the police power, said: "That power is not confined, as we have said, to the suppression of what is offensive, disorderly or unsanitary. It extends to so dealing with the conditions which exist in the state as to bring out of them the greatest welfare of its people."

In *Los Angeles County* v. *Spencer,* 126 Cal. 670, 77 Am. St. Rep. 217, 59 Pac. 202, the court had under consideration the question of the validity of a statute to promote and protect the horticultural interests of California in terms somewhat similar to our own, and upon the subject said: "It is known that the existence of the fruit industry in the state depends upon the suppression and destruction of the pests mentioned in the statute. The Act in question is, therefore, a proper exercise of the police power which the legislature has, under section 1 of Article XIX of the Constitution, to subject private property to such reasonable restraints and burdens as will secure and maintain the general welfare and prosperity of the state."

In *State* v. *Main,* 69 Conn. 123, 61 Am. St. Rep. 30, 36 L. R. A. 623, 37 Atl. 80, the constitutionality of a statute which provided for the destruction of peach trees affected with the "yellows," was upheld, and upon the power of the state to enact and enforce such legislation the court said: "Such a disease it was proper for the General Assembly, in the exercise of its police power, to endeavor to suppress, even by the destruction of the trees attacked by it, if there was a reasonable apprehension of substantial danger, from allowing them to live, to those who might eat their fruit, or to other peach orchards."

The statute and board regulations are attacked also upon the [2] ground that they are unreasonable, in that they admit of the total destruction of affected fruit which is not altogether

useless, and in this connection our attention is directed to certain of the regulations which lodge with the inspector the discretion to permit the owner of apples affected with the scab to manufacture such fruit into cider, jellies, or other by-products. It would seem to answer this contention to say that the complaint does not charge abuse of discretion on the part of the inspector, or make any claim that plaintiff desired to use the fruit in question for any of the purposes permitted by the board. He alleges, on the contrary, that it was his intention to ship the fruit to other points for sale in the open market.

It is no objection to the enforcement of a police regulation that the thing proscribed may be put to profitable use without injury or danger to anyone. If by the particular use to which it is sought to be applied the public interests are jeopardized, such use may be regulated or prohibited altogether. In principle, the decisions of the supreme court of the United States in the oleomargarine cases are conclusive upon this question. (*Powell* v. *Pennsylvania,* 127 U. S. 678, 32 L. Ed. 253, 8 Sup. Ct. Rep. 992, 1257; *Plumley* v. *Massachusetts,* 155 U. S. 461, 39 L. Ed. 223, 15 Sup. Ct. Rep. 154; *Capital City Dairy Co.* v. *Ohio,* 183 U. S. 238, 46 L. Ed. 171, 22 Sup. Ct. Rep. 120.)

It was plaintiff's own act in seeking to make use of his diseased fruit for a purpose inimical to the public welfare that brought down upon him the penalty of the statute. Under such circumstances he is not in a position to insist that he ought to have been permitted to use it for a purpose other than the one to which he indicated his intention to devote it.

2. The contention that the legislature attempts to lodge in the [3] inspector executive and judicial powers is untenable. In determining that fruit is affected with any dangerous and contagious disease the officer is required to apply his knowledge and make deductions from the evidence before him, but this does not constitute his act a judicial one, within the meaning of the Constitution, and upon this the authorities are quite unanimous. (*Cunningham* v. *Northwestern Imp. Co.,* above; *Los Angeles*

*County* v. *Spencer,* above; *Buttfield* v. *Stranahan,* 192 U. S. 470, 48 L. Ed. 525, 24 Sup. Ct. Rep. 349; 1 Rul. Cas. Law, 790.)

3. It may be conceded at once that private property cannot [4] be taken or damaged for public use without just compensation (sec. 14, Art. III, Const. of Montana), or that the private property of one person cannot be taken against his will for the private use of another, either with or without compensation (secs. 3 and 27, Art. III, Const. of Montana; 15 Cyc. 578), and, if the statute or board regulations offended against either of these principles, the offending provision would be invalid to that extent at least. Appellant's argument upon this branch of the case fails, in that it has its foundation in the assumption that the property in question was taken for either a public or private use, whereas there is not any justification for such assumption. On the contrary, the complaint discloses affirmatively that the fruit was destroyed and its usefulness, if any, ended altogether. The mere fact that other orchardists may profit by the destruction of this menace to their fruit and trees does not convert the act of destruction from its character as one for the public welfare into one for the private use or benefit of such people. (*Spratt* v. *Helena Power T. Co.,* 37 Mont. 60, 94 Pac. 631; *Butte, A. & P. Ry. Co.* v. *Montana U. Ry. Co.,* 16 Mont. 504, 50 Am. St. Rep. 508, 31 L. R. A. 298, 41 Pac. 232.)

In the destruction of private dwellings to stop the spread of a fire, or of animals affected with a contagious disease to protect the livestock industry, private interests are served as an incident to the public benefit reaped, but the dwellings in the one instance, or the animals in the other, are not subjected to the private use of the more fortunate owners who are saved from the effects of the conflagration or plague. For the stronger reason the constitutional guaranty of section 14, Article III, is not available to plaintiff. The fruit in question was destroyed to serve a public purpose, but not to be devoted to a public one. (*State* v. *Board of Commrs. of Deer Lodge County,* 19 Mont. 582, 49 Pac. 147.) That provision of the Constitution refers to the authority exercised by the state or through some designated

agency, by virtue of the power of eminent domain, where the property taken is subjected to some public use as for highway, railway or other purpose in which the public interest is the predominating factor. It has no application whatever to property destroyed by the public agencies acting by virtue of the police power of the state.

In *Livingston* v. *Ellis County*, 30 Tex. Civ. App. 19, 68 S. W. 723, the court considered a like contention raised with reference to section 17, Article I of the Texas Constitution, similar in its provisions to section 14, Article III, above, and said: "There is an obligation upon every property owner to so use his own as not to interfere with the general welfare of the community in which he lives. The enforcement of this duty pertains to the police power of the state so far as the exercise of that power affects private property. Whatever restraints the legislature imposes upon the use and enjoyment of property within the reason and principle of this duty, the owner must submit to, and for any inconvenience or loss which he sustains thereby he is without remedy. The enforcement of this duty is a regulation and the exercise of the police power of the state. Article I, section 17, of the state Constitution has reference to the exerise of the right of eminent domain. It has reference to the taking and appropriation of property for public use. It has no application to the regulation and restriction of the use and enjoyment of property by its owner for the public welfare, but refers to the taking of property from the owner and its appropriation to some particular use for the public welfare. The Articles under consideration provide a wholesome regulation to prevent the spread of a dangerous disease. It is such a regulation as the state has the right, under its police powers, to make, and is not prohibited by Article I, section 17, of the state Constitution." (See, also, Cooley's Constitutional Limitations, 7th ed., 830.)

4. These statutory and board regulations do not operate to deprive the owner of his property without due process of law or deny to him the equal protection of the law. By "due pro-

[5, 6] cess of law'' is not meant necessarily ''by judicial proceedings.'' (*Cunningham* v. *Northwestern Imp. Co.*, above; *State ex rel. Marshall* v. *District Court*, 50 Mont. 289, 146 Pac. 743.) The general rule is that if, under the operation of a statute, the property owner is not denied the right to test the existence of the condition condemned by the statute, and to obtain redress as for a trespass, if such condition does not exist, then the legislation is not obnoxious to the constitutional provision which guarantees to the owner that he shall not be deprived of his property without due process of law. (*Spratt* v. *Helena Power T. Co.* above; *Newark etc. Ry. Co.* v. *Hunt*, 50 N. J. Law, 308, 12 Atl. 697.)

In the present action every opportunity might be had to determine whether plaintiff's fruit was affected, and, if it was not, his right to recover could not be questioned. Since, however, he admits by his demurrer the diseased condition of his apples, as charged in the answer, there is not any question left for judicial or other determination. He cannot stand upon his abstract right to handle diseased fruit and have the same transported from place to place, with the concomitant right to spread the disease among fruit and fruit trees generally.

Nor is it an objection to the validity of a police regulation that it does not provide for a hearing or for notice to the [7] owner before his property is subjected to restraint or destruction. The very purpose to be subserved by such a regulation would be defeated if the officer charged with its administration was required to give notice or conduct a hearing before he could proceed. His action is intended to be prompt and summary. He is clothed with the extraordinary power for the express purpose of protecting the community, and it is important to the efficiency of his work that he be impeded as little as possible by the necessary observance of mere formalities. (*City of Salem* v. *Eastern R. R. Co.*, 98 Mass. 431, 96 Am. Dec. 650; *Newark etc. Ry. Co.* v. *Hunt*, above.)

That no provision is made for compensating the owner whose property is destroyed is likewise not a valid objection to the

enforcement of a police regulation, and upon this question also the authorities are uniformly agreed. (6 Rul. Cas. Law, 201; *Livingston* v. *Ellis County,* above; *Train* v. *Boston Disinfecting Co.,* 144 Mass. 523, 59 Am. Rep. 113, 11 N. E. 929.)

Appellant is in error in assuming that by the enforcement [8] of these regulations he is denied the equal protection of the law. They are general in their terms, uniform in their application, and comprehend all fruit similarly affected. This contention is answered by our former adjudications. In *City of Butte* v. *Paltrovich,* 30 Mont. 18, 104 Am. St. Rep. 698, 75 Pac. 521, we said: "It is only" in cases "where persons engaged in the same business are subjected to different restrictions, or are granted different privileges under like conditions, that the discrimination is open to objection, or can be said to impair the equal right which all may claim under the law."

We find no error in the record, and the judgment is therefore affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.