STATE, RESPONDENT, *v.* LOOMIS, APPELLANT.

(No. 5,847.)

(Submitted November 30, 1925. Decided December 16, 1925.)

[242 Pac. 344.]

*Sunday Observance Law—Constitutionality—Police Power—Dance-halls—Act not Arbitrarily Discriminatory.*

Statutes — Constitutionality — Equal Protection of Law — Classification of Subjects—Rule.
  1.  Where a statute is attacked on the constitutional ground that it denies plaintiff the equal protection of the law (Fourteenth Amendment, U. S. Constitution), in that in the classification of subjects made therein he was discriminated against, it will be presumed that the classification is reasonable, the burden of showing that it is arbitrary and cannot be justified upon any admissible hypothesis, resting upon him.

Same—Classification of Subjects—Discrimination—When Deemed Arbitrary —When not.
  2.  Classification of subjects for the purpose of legislation does not depend upon scientific or marked differences in things or persons or in their relations, it being sufficient to withstand the charge of dis-

---

[75 Mont. 88.]

crimination—the very essence of classification and not objectionable unless founded on distinctions unreasonable or purely fictitious—if it is practical and not palpably arbitrary.

Same—Sunday Police Regulations—Reclassification of Subjects—Power of Legislature.
3.   The fact that the legislature for many years had placed theaters and dance-houses in one class of subjects under police regulation did not deprive it of the power subsequently to make a reclassification, the existence of facts sufficient to warrant the change being presumed.

Same—Sunday Observance—Amusements—Classification—Legislative Latitude.
4.   It is competent for the legislature to recognize different degrees of the possible evil tendencies inherent in different forms of amusement or entertainment, and classify the subjects for the purpose of appropriate regulation, without being open to the charge that the Act is arbitrary or unwarranted; and in making selections for classification a wide latitude is permitted.

Same—Entire Field of Appropriate Legislation on Any Subject Need not be Covered in Single Act.
5.   The equal protection of the law clause of the Fourteenth Amendment to the federal Constitution neither requires that state laws shall be perfect nor that the entire field of appropriate legislation shall be covered in a single enactment.

Same—Sunday Observance—Keeping Open of Dance-halls—Validity of Act.
6.   Under the above rules, *held* that section 11039, Revised Codes of 1921 (Chap. 92, Laws of 1915), prohibiting the keeping open of dance-halls, dance-houses, *etc.*, on Sunday, is not invalid as making an arbitrary classification between dance-halls and theaters by exempting the latter places of amusement from the operation of the Act, although prior thereto they had been included in one class subject to police regulation.

Same—Police Regulations—Power of Legislature to Restrict Territorial Limits in Which to Conduct Certain Businesses.
7.   Under its police power the state may restrict the territorial limits within which certain businesses may be conducted or certain privileges enjoyed.

Same—Sunday Observance—Keeping Open of Dance-halls in Certain Localities—Act not Arbitrary.
8.   The state has the right to prescribe the territorial limits within which dance-houses or dance-halls may be conducted on Sunday; therefore section 11039, Revised Codes of 1921, providing that a dance hall or pavilion in a public park or playground may operate on Sunday under certain conditions, while one located outside thereof must remain closed on that day, does not arbitrarily discriminate between subjects of the same class, but does create two distinct classes based upon location, and hence is not objectionable as denying the equal protection of the law.

---

4.   See 6 R. C. L. 384.
6.   Validity of classification in Sunday law, see notes in 14 L. R. A. (n. s.), 1259; 32 L. R. A. (n. s.) 1190.
8.   See 6 R. C. L. 388.

[75 Mont. 88.]

Same—"Dance-house"—Definition.
    9.  A dance-house or dance-hall is a place maintained for promiscuous and public dancing, the rules for admission to which are not based upon personal selection or invitation.

Police Power—Nature and Extent of Power.
    10.  The police power is not restricted to the regulation or supervision of what is offensive, disorderly or insanitary, but embraces regulation designed to promote the public convenience and the peace and good order of society, *i. e.*, it may be exercised in aid of what is sanctioned by usage, or held by the prevailing morality and preponderant opinion to be necessary to the public welfare, and has its foundation in the maxim *sic utere tuo ut alienum non laedas.*

---

    [1] Constitutional Law, 12 C. J., sec. 220, p. 787, n. 96; sec. 221, p. 794, n. 20; sec. 226, p. 800, n. 69; sec. 878, p. 1147, n. 13.
    [2] Constitutional Law, 12 C. J., sec. 855, p. 1129, n. 22; sec. 856, p. 1131, n. 38, 39; sec. 878, p. 1147, n. 15, p. 1148, n. 18.
    [3] Constitutional Law, 12 C. J., sec. 219, p. 787, n. 90; sec. 860, p. 1137, n. 81.
    [4] Constitutional Law, 12 C. J., sec. 856, p. 1131, n. 39; sec. 878, p. 1147, n. 13.
    [5] Constitutional Law, 12 C. J., sec. 878, p. 1147, n. 11, p. 1148, n. 17.
    [6] Sunday, 37 Cyc., p. 551, n. 24.
    [7] Constitutional Law, 12 C. J., sec. 431, p. 922, n. 64 New.
    [8] Constitutional Law, 12 C. J., sec. 858, p. 1133, n. 4, 14 New.
    [9] Dance-house, 17 C. J., p. 1125, n. 46, 46 New.
    [10] Constitutional Law, 12 C. J., sec. 415, p. 907, n. 19; sec. 416, p. 908, n. 25, p. 909, n. 32. *Sic utere tuo,* 36 Cyc., p. 436, n. 4.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ERNEST LOOMIS was found guilty of keeping open a dance-hall on Sunday, and appeals from the judgment and from the order refusing him a new trial. Affirmed.

*Messrs. Walker & Walker* and *Mr. C. S. Wagner,* for Appellant, submitted a brief; *Mr. Thomas J. Walker* and *Mr. Wagner* argued the cause orally.

Citing: *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833; *State* v.

---

    9. State or municipal regulation of dance-halls, see note in Ann. Cas. 1915C, 1110.
    Sunday laws as applicable to dancing, see note in 16 Ann. Cas. 410.
    10. Police power and the Fourteenth Amendment, see notes in 25 Am. St. Rep. 882, 888.

[75 Mont. 88.]

*Holland,* 37 Mont. 393, 96 Pac. 719; *Mills* v. *Olsen,* 43 Mont. 129, 115 Pac. 33; *In re Van Horn,* 74 N. J. Eq. 600, 70 Atl. 986; *People ex rel. Duryea* v. *Wilbur,* 198 N. Y. 1, 19 Ann. Cas. 626, 27 L. R. A. (n. s.) 357, 90 N. E. 1140; *Frorer* v. *People,* 141 Ill. 171, 16 L. R. A. 492, 31 N. E. 395; *State* v. *Garbroski,* 111 Iowa, 496, 82 Am. St. Rep. 524, 56 L. R. A. 570, 82 N. W. 959; *Board of Council of Harrodsburg* v. *Renfro,* 22 Ky. Law Rep. 806, 51 L. R. A. 897, 58 S. W. 795; *City of Denver* v. *Bach,* 26 Colo. 530, 46 L. R. A. 848, 58 Pac. 1089; *State* v. *Goodwill,* 33 W. Va. 179, 25 Am. St. Rep. 863, and note 878, 6 L. R. A. 621, 10 S. E. 285; *State* v. *Gans,* 124 La. 535, 24 L. R. A. (n. s.) 1072, 50 South. 524; *City of Spokane* v. *Macho,* 51 Wash. 322, 130 Am. St. Rep. 1100, 21 L. R. A. (n. s.) 263, 98 Pac. 755.

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for the State, submitted a brief; *Mr. Choate* argued the cause orally.

Citing: *Carr* v. *State,* 175 Ind. 241, 32 L. R. A. (n. s.) 1190, 93 N. E. 1071; *State* v. *Dolan,* 13 Idaho, 693, 14 L. R. A. (n. s.) 1259, 92 Pac. 995; *State* v. *Petit,* 74 Minn. 376, 77 N. W. 225; *West Coast Theaters* v. *City of Pomona,* 68 Cal. App. 763, 230 Pac. 225; *Ex parte Sumida,* 177 Cal. 388, 170 Pac. 823; *State ex rel. Civello* v. *City of New Orleans,* 154 La. 271, 97 South. 440; *Boland* v. *Campagno,* 154 La. 469, 97 South. 661; *Atkinson* v. *Piper,* 181 Wis. 519, 195 N. W. 544; *State* v. *Rose,* 40 Mont. 66, 105 Pac. 82, 6 R. C. L. 421–424; *Debardelaben* v. *State,* 99 Tenn. 649, 42 S. W. 684; *White* v. *Bracelin,* 144 Mich. 332, 107 N. W. 1055; *Webster* v. *State* (Tenn.), 75 S. W. 1020; 6 R. C. L. 384; 12 C. J. 1160–1172; 37 Cyc. 541, 542.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The defendant was found guilty of keeping open a dance-hall on Sunday and has appealed from the judgment and from an order denying his motion for a new trial.

The cause was submitted upon an agreed statement of facts, from which it appears that from 9 P. M. until midnight of Sunday, October 18, 1925, the defendant kept open a dance-hall located on the second floor of a building at 102 South Montana Street in the business district of the city of Butte, and conducted a public dance therein.

Prior to 1915 there was in force in this state a statute which provided: "Every person who on Sunday, or the first day of the week, keeps open or maintains or aids in opening or maintaining any theater, playhouse, dance house, race track, gambling house, concert saloon or variety hall is guilty of a misdemeanor." The Fourteenth Legislative Assembly amended the Act and in the amended form it is now section 11039, Revised Codes of 1921, and reads as follows:

"Every person who on Sunday, or the first day of the week, keeps open or maintains, or who aids in opening or maintaining any dance hall, dance house, race track, gambling house or pool room, variety hall, or any other place of amusement where any intoxicating liquors are sold or dispensed, is guilty of a misdemeanor; provided, however, that the provisions of this section shall not apply to such dancing halls or pavilions as are maintained or conducted in public parks or playgrounds where no admission is charged, and where good order is maintained, and where no intoxicating liquors are sold."

The history of the legislation in this jurisdiction will be found in the opinion in *In re Klune,* 74 Mont. 332, 240 Pac. 286. It will be observed that one effect of the amendment was to relieve theaters and playhouses from the restriction theretofore imposed upon them, while dance-houses and dance-halls were continued under the ban of the law; and it is the contention of the defendant that in making this discrimination the amended Act denies to him the equal protection of the law.

It is conceded, as it must be, that it is competent for the **[1]** lawmakers to classify subjects of legislation and to deal

differently with the different classes created, if the classification is reasonable and not a mere artificial arrangement or subterfuge to avoid the inhibition of the Fourteenth Amendment to the federal Constitution. Whether the classification made by the amended Act is reasonable was a matter for legislative determination in the first instance (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477), and every reasonable presumption will be indulged in favor of the validity of the Act; in other words, it will be presumed that the classification is reasonable, and the defendant must assume the burden of showing that there is not any admissible hypothesis upon which it can be justified (*Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250).

We enter upon our investigation with this principle in mind: [2] It is not necessary that classification depend "on scientific or marked differences in things or persons or in their relations. It suffices if it is practical, and it is not reviewable unless palpably arbitrary." (*Insurance Co.* v. *Daggs,* 172 U. S. 557, 562, 43 L. Ed. 552, 19 Sup. Ct. Rep. 281, 282; *Hill* v. *Rae,* 52 Mont. 378, Ann. Cas. 1917E, 210, L. R. A. 1917A, 495, 158 Pac. 826.)

The mere fact that the Act discriminates between theaters and playhouses, on the one hand, and dance-houses and dance-halls, on the other, will not condemn it. Discrimination is the very essence of classification and is not objectionable unless founded on distinctions which the courts are compelled to pronounce unreasonable or purely fictitious. (*Quong Wing* v. *Kirkendall,* 223 U. S. 59, 62, 56 L. Ed. 350, 32 Sup. Ct. Rep. 192.)

Emphasis is laid upon the fact that, from 1871 to 1915, theaters, playhouses and dance-houses were included in one class of subjects under police regulation, and it is urged that the statute in force during that period was a legislative declaration that those subjects were so closely akin in their nature and effect that it was necessary that they be grouped

in one class. This much may be conceded, but it does not follow that a different classification might not be made in 1915. The Fourteenth Legislative Assembly was not bound by the classification made by any of its predecessors. It [3] may be assumed that the surrounding circumstances in 1871 justified fully the association of theaters and playhouses with dance-houses; but if, in fact, the character of entertainments given in theaters and playhouses on Sundays in 1871, or the manner in which those places were conducted, had changed to such extent that the evil sought to be remedied in the first instance had disappeared altogether or had been mitigated in 1915, whereas no such change had occurred in the manner in which dance-houses or dance-halls were conducted, this would justify the reclassification, and the existence of facts sufficient to warrant the change will be presumed. (*Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, Ann. Cas. 1912C, 160, 55 L. Ed. 369, 31 Sup. Ct. Rep. 337.)

It is always competent for the legislature to recognize dif- [4] ferent degrees of the possible evil tendencies inherent in different forms of amusement or entertainment, and to give effect thereto in classifying the subjects for the purpose of appropriate regulation, without being open to the charge that the Act is arbitrary or unwarranted. (*Manufacturing Co.* v. *Worst*, 207 U. S. 338, 52 L. Ed. 236, 28 Sup. Ct. Rep. 114; *Engel* v. *O'Malley*, 219 U. S. 128, 55 L. Ed. 128, 31 Sup. Ct. Rep. 190; *Loan Co.* v. *Martell*, 222 U. S. 225, Ann. Cas. 1913B, 529, 56 L. Ed. 175, 32 Sup. Ct. Rep. 74.) A very wide latitude is permitted in making selections for classification, and necessarily so, for it is obvious that things may have diverse qualities and belong to the same class, or they may have many characteristics in common and be cast into different classes. (*Billings* v. *Illinois*, 188 U. S. 97, 47 L. Ed. 400, 23 Sup. Ct. Rep. 272.)

Sunday observance laws similar to the one under consideration are in force in practically every state of the Union,

and almost without exception they contain provisions exempting certain businesses, occupations or vocations. They are sustained quite uniformly upon the theory that the selection of subjects for exemption is peculiarly a matter of legislative discretion. (*Geyer* v. *Buck* (Sup.), 175 N. Y. Supp. 613.) The decided cases are reviewed at length in *Carr* v. *State,* 175 Ind. 241, 32 L. R. A. (n. s.) 1190, 93 N. E. 1071, and in the note to 29 A. L. R. 397.

But, although theaters and playhouses are still proper subjects of police regulation, the fact that the state does not now see fit to exert its authority in that respect does not militate against its right to regulate other subjects clearly within the range of its police power. (*City of Butte* v. *Paltrovich,* 30 Mont. 18, 104 Am. St. Rep. 698, 75 Pac. 521.) The [5] equal protection clause of the Fourteenth Amendment neither requires that state laws shall be perfect nor that the entire field of appropriate legislation shall be covered in a single enactment. (*Rosenthal* v. *New York,* 226 U. S. 260, Ann. Cas. 1914B, 71, 57 L. Ed. 212, 33 Sup. Ct. Rep. 27.)

Laws are not judged by theoretical standards, but by concrete conditions which induce them, and, before the de- [6] fendant can insist that the amended Act be condemned, he must be able to demonstrate that there are not any valid reasons for the application of Sunday observance regulations to dance-houses and dance-halls which do not apply equally to theaters and playhouses (*Missouri, K. & T. R. Co.* v. *May,* 194 U. S. 267, 48 L. Ed. 971, 24 Sup. Ct. Rep. 638; *Watson* v. *Maryland,* 218 U. S. 173, 54 L. Ed. 987, 30 Sup. Ct. Rep. 644), and in this he has failed; at least we are not satisfied beyond a reasonable doubt that the classification made by the amended Act is arbitrary or unreasonable, and this is the test by which the validity of the Act must be determined (*Goodell* v. *Judith Basin County,* 70 Mont. 222, 224 Pac. 1110).

It is contended, further, that by the proviso found in the [7, 8] amended Act an arbitrary distinction is drawn be-

tween subjects of the same class, in this: That a dancing hall or pavilion in a public park or playground is permitted to open and operate on Sunday, whereas a dance-house or dance-hall located outside of a public park or playground is required to close on that day. If it be assumed that a dancing hall or pavilion in a public park or playground of necessity belongs to the same class as a dance-house or dance-hall located outside of a public park or playground, defendant might be in a position to complain. On the other hand, if we assume the existence of two distinct classes, defendant cannot insist that the same regulations must apply to each.

The principal controversy arises over the question: Was it competent for the legislature in 1915 to create one class which includes dance-houses and dance-halls located outside of public parks and playgrounds, and another class composed of dancing halls or pavilions in public parks and playgrounds where admission is not charged, where good order is maintained, and where intoxicating liquor is not sold?

It is elementary that the police power may be exerted by restricting the territorial limits within which certain businesses may be conducted or certain privileges enjoyed. It is in virtue of this power that fire limits are prescribed for municipalities and objectionable classes of business or amusements are excluded from residence districts. The decided cases upholding legislation which restricted the districts in which saloons, livery-stables, powder magazines, cemeteries, cab-stands and other subjects of police regulation might be conducted or maintained, are too numerous to be mentioned here. Likewise, statutes which sanctioned betting on races within fair-grounds or race-grounds, but prohibited such betting elsewhere, were sustained uniformly. (*Ex parte Tuttle,* 91 Cal. 589, 27 Pac. 933; *State* v. *Thompson,* 160 Mo. 333, 83 Am. St. Rep. 468, 54 L. R. A. 950, 60 S. W. 1077; *Debardelaben* v. *State,* 99 Tenn. 649, 42 S. W. 684; 6 R. C. L. 424; 12 C. J. 1133. See, also, *State* v. *Rose,* 40 Mont. 66, 105 Pac.

82; *State* v. *Sylvester*, 40 Mont. 79, 105 Pac. 86; *State* v. *Gemmell*, 45 Mont. 210, 122 Pac. 268.) The right of the state to regulate dance-houses or dance-halls cannot be questioned (Freund on Police Power, sec. 250), and, for the same reasons which justified the legislation above, the state may prescribe the territorial limits within which dance-houses or dance-halls may be opened on Sunday. The amended Act does not discriminate between subjects of the same class, but does create two distinct classes, based upon location (*Bacon* v. *Walker*, 204 U. S. 311, 51 L. Ed. 499, 27 Sup. Ct. Rep. 289), and it is not inconceivable that the legislature had before it ample evidence to justify the distinction made.

It is apparent that one purpose of the amendment was to strengthen the law by imposing restrictions where none were imposed theretofore. The legislature has never assumed to define the term "dance-house" or "dance-hall," for the [9] obvious reason that it did not require definition. It always has meant and now means a place maintained for promiscuous and public dancing, the rules for admission to which are not based upon personal selection or invitation. (*State* v. *Rosenfield*, 111 Minn. 301, 137 Am. St. Rep. 557, 29 L. R. A. (n. s.) 331, 126 N. W. 1068.) Prior to the amendment of 1915 a dancing pavilion in a public park was not subject to any state regulation whatever. It was not comprehended in the original Act, for a dancing pavilion is not a dance-house or dance-hall. (*Israel* v. *New Orleans*, 130 La. 980, 58 South. 850.) By the amendment, dancing pavilions in public parks or playgrounds were made subject to police regulation for the first time. They are now permitted to open and operate on Sunday only on condition that admission is not charged, that good order is maintained, and that intoxicating liquors are not sold. It was competent for the legislature to require that admission be free, to the end that the public generally, or such portion as chose to take advantage of the privilege, might have the opportunity to observe the conduct of those engaged in the pastime and

exert a restraining influence upon any attempt at disorder. It may be that the same reasons for closing dance-houses and dance-halls outside of public parks exist, but in a different degree, with respect to dancing halls or pavilions in public parks; but, as we have observed heretofore, it is competent for the legislature to recognize different degrees of evil to be avoided or benefit to be obtained and legislate accordingly, without being arbitrary.

Emphasis is also laid upon the fact that the particular dance-hall in question is patronized by some of the best people of the community; that good order is maintained at all times; that objectionable characters are excluded; and that intoxicating liquors are not sold; but the police power is not re- [10] stricted to the regulation or supervision of what is offensive, disorderly or insanitary. It embraces regulation designed to promote the public convenience and the peace and good order of society (*Railway Co.* v. *Commissioners*, 200 U. S. 561, 592, 4 Ann. Cas. 1175, 50 L. Ed. 596, 26 Sup. Ct. Rep. 341), or, as has been said aptly: "It extends to all the great. public needs. * * * It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." (*Noble State Bank* v. *Haskell*, 219 U. S. 104, 111, Ann. Cas. 1912A, 487, 32 L. R. A. (n. s.) 1062, 55 L. Ed. 112, 31 Sup. Ct. Rep. 186, 188; *Cunningham* v. *Northwestern Imp. Co.*, 44 Mont. 180, 119 Pac. 554; *Colvill* v. *Fox*, 51 Mont. 72, L. R. A. 1915F, 894, 149 Pac. 496.)

No useful purpose would be served by a review of the cases of that class to which *State* v. *Cudahy Packing Co.*, 33 Mont. 179, 114 Am. St. Rep. 804, 8 Ann. Cas. 717, 82 Pac. 833, and *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 46 L. Ed. 679, 22 Sup. Ct. Rep. 431, belong. The distinction between cases in that class and cases like the one before us is pointed out in *Ozan L. Co.* v. *Bank*, 207 U. S. 251,

257, 52 L. Ed. 195, 28 Sup. Ct. Rep. 89. The police power has its foundation in the maxim, *"Sic utere tuo ut alienum non laedas,"* translated liberally by our Code, "One must so use his own rights as not to infringe upon the rights of another" (sec. 8743, Rev. Codes), and is put forth upon the theory that many restrictions must be imposed upon human activities in order to adapt our laws to human conduct.

It is our judgment that the amended Act is not open to the objections urged against it, and accordingly the judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.